# WHEELING.

## ALLEN v. BARTLETT.

Submitted June 13, 1882—Decided July 8, 1882.

1. The law is well settled in this State, that upon a demurrer to evidence the demurrant must be considered as allowing full credit to all the evidence of the demurree, and admitting all facts directly proved by it, or that a jury might fairly infer therefrom, and as waiving all the parol evidence on his part, which contradicts that offered by the demurree, or the credit of which is impeached, and all inferences from his own evidence, which do not necessarily flow from it. (p. 52.)

2. When once the relation of landlord and tenant is established by the act of the parties, it attaches to all, who may succeed to the possession through or under the tenant whether immediately or remotely, the succeeding tenant being as much bound by the acts and admissions of his predecessor, as if they were his own. (p. 53.)

3. Where the tenant holds over after the expiration of his lease, and the lessor receives rent accruing subsequently to the expiration of the term, or does any act, from which it may be inferred, that he intends to recognize him still as such tenant, he becomes thereby a tenant from year to year upon the conditions of the original lease. (p. 53.)

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Harrison, rendered on the 7th day of January, 1880, in an action in said court then pending; wherein Mary E. P. Allen was plaintiff, and Wirt Bartlett was defendant, allowed upon the petition of said Allen.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the judgment complained of.

The facts of the case fully appear in the opinion of the Court:

*C. Boggess* for plaintiff in error:

1. The continuing over by Smith after the 1st of April, 1873, with the assent of Allen, made him a tenant from *year* to *year* upon the same terms as contained in the written lease under which he entered. Smith Land. and Ten. pp. 21, 22; Id. pp. 219–20–21; Chitty on Cont. p. 323–4; 1 Lom. Dig.

Tit. VIII. §§ 17, 18, 19, 20; *Emerick, &c.,* v. *Tavener,* 9 Gratt. p. 236.

2. Tenancy from year to year is assignable and capable of supporting an under lease by yearly tenant. Smith Land. and Ten. p. 23.

3. A tenancy from year to year is determinable upon notice to quit; neither landlord nor tenant can at will determine it. Smith Land. and Ten. pp. 22, 221, 234; Chitty on Cont. p. 340; Code W. Va. p. 526, § 5.

4. After April, 1873, the tenancy became one from year to year and no notice to quit had been given. The defendant entered into the premises prior to the year beginning April 1st, 1874, as assignee of Smith and with the consent of the landlord. And his holding was upon the same terms as in the written contract, and for the year following the one in which he entered under Smith. See the receipt of 10th of May, 1875, on p. 19, printed record, and which was prepared by the defendant, showing that he entered upon the premises under the lease to Smith. He sowed small grain on the land in the fall of 1874, and continued to hold over after the first of April, 1875, and without having given notice to quit.

5. The court should have given judgment for the plaintiff upon the demurrer to the evidence.

*A. L. Hustead* for defendant in error:

This cause comes into this court on a demurrer by the plaintiff to the defendant's evidence. As an authority embracing the whole law of demurrer to evidence, so far as raised in this case, see case of *Miller, use, &c.* v. *Insurance Co.,* 8 W. Va. Rep. pp. 515, 533–4, 536–7, and authorities there cited.

1. Generally appellate court will not disturb judgment rendered by judge who presided and heard the demurree's witnesses, &c.

2. The demurree is entitled to have his evidence "most benignly interpreted" by the court.

3. The demurree is entitled of all fair inferences.

The judgment of the circuit court was right and should be affirmed.

SNYDER, JUDGE, announced the opinion of the Court:

Mary E. P. Allen, on the 19th day of April, 1876, brought an action of *assumpsit* in the circuit court of Harrison county against Wirt Bartlett to recover two hundred and fifty dollars for rent, damages and the use and occupation of a tract of two hundred and forty acres of land in said county known as the "Jack run land." The defendant entered the plea of *non-assumpsit*; and at the June term, 1879, the said action was submitted to a jury; and after all the evidence was heard the plaintiff demurred to the evidence of the defendant, in which demurrer the defendant joined; and thereupon the jury assessed the damages of the plaintiff at two hundred and fifty-eight dollars, with interest from June 1, 1879, until paid, subject to the opinion of the court upon the law arising upon said demurrer. All the evidence appears in this record; and that of the plaintiff is substantially as follows:

On the 11th day of May, 1872, the plaintiff by her agent, John J. Allen, entered into a written agreement of lease under seal with Mordecai Smith, by which the plaintiff leased to said Smith her "Jack run land" in Harrison county for the term of one year from April 1, 1872, to April 1, 1873, at the rental of two hundred dollars, of which fifty dollars was to be paid in permanent improvements on the land during the year and the balance in money at the expiration of the term; the said lease not to be transferred or assigned without the consent of the plaintiff, nor is said Smith to sub-let any portion of it. The said Smith to have the right after the expiration of the lease to enter and harvest the small grain sowed by him this fall; and he is to deliver in the mill at Clarksburg one-third of the small grain raised by him; but should the said Smith hold over by the consent of the plaintiff endorsed on the lease, then he is not to account to plaintiff for said one-third of the small grain.

The plaintiff introduced as a witness John R. Boggess, who testified, that he was in 1873, the agent of the plaintiff to collect the rents due her under the aforesaid agreement and had the said agreement in his possession, and that he was not the agent of the plaintiff for any other purpose; that he collected the rents thereon from said Smith for the year

ending April 1, 1873; that said Smith continued in the possession of said land after that time under said agreement and paid to witness the rent therefor until April 1, 1874; that some time in the winter of 1873–4 the said Smith came to witness and said, he wanted to go away, and asked leave for defendant to go into the possession of said land under the said lease, and that witness assented thereto, and defendant did so enter into the possession of said land and continued thus under said lease until the 1st day of April, 1875; that he had no authority to change the terms of said lease, and did not do so, and made no terms or agreement with the defendant in relation thereto; had no conversation with the defendant in relation to his giving up said land until after he had entered therein. "He did not notify me or the plaintiff, so far as I know, or have been informed, that he did not intend to remain thereon after the 1st of April, 1875. How long he remained there after that time I do not know." That he, witness, did not enter upon said land as agent of the plaintiff after the 1st of April, 1875, and declare the holding over by defendant unlawful, and demand rent until after defendant had left the premises, and after the 1st of April, 1876. That the defendant paid him no rent for the said premises except the sum of two hundred dollars for the year from 1st of April, 1874, to 1st of April, 1875, which were paid to me as the agent of the plaintiff to receive the same.

And the defendant, to maintain the issue on his part, introduced himself as a witness and testified as follows: In the fall of the year 1873 I concluded that I wanted the Jack run land in controversy, having learned from Mordecai Smith, the then tenant, that he intended to leave, and got him to see Mr. John R. Boggess to let me have the land. I learned from said Smith afterwards, and before I entered, that he rented for me from said Boggess. And I afterward entered into said land under said Smith in February or March, 1874, and continued there until Smith's year ended, 1st of April, 1874, and continued there from that time until after the 1st of April, 1875. I had no conversation or agreement personally in reference to the said rent as *previous* with said Boggess until some time after I entered under the agreement said Smith had made, and after the 1st of April, 1874; I sowed

7

grain on the premises in the fall of 1873 and also in the fall of 1874, and harvested both crops. I paid to said Boggess the rent for said land for the year that Smith rented it for me, from 1874 to 1875, as follows: One hundred dollars on the 10th of May, 1875, and one hundred and two dollars and eighty-four cents on the 20th of July, 1875, and took his receipts therefor, which are in the words and figures following:

"Received, May the 10th, 1875, of Wirt Bartlett, one hundred dollars on amount due on lease to Mordecai Smith, on the Jack run farm of Mary E. P. Allen, of two hundred and forty acres, the claim being for a part of the rent due for the year beginning April 1, 1874, and ending April 1, 1875.

"MARY E. P. ALLEN,
"By JOHN R. BOGGESS,
"*Her Agent.*"

"JULY, 1875.

"Received of M. Smith, by the hand of Wirt Bartlett, one hundred and ten dollars and eighty-three cents in full for the rent of two hundred and forty acres of land on Jack run, leased to the said M. Smith for the year ending the 1st of April, 1875.          "JOHN R. BOGGESS."

The first one of said receipts I had written for said Boggess to sign, in pursuance of the arrangement made by Smith for me with the plaintiff's agent, as I understood from Smith before I entered, and from said Boggess after I entered; and I learned from Smith before entering, and from said Boggess after entering, that Smith had rented the place for me for one year, beginning April 1, 1874, and ending April 1, 1875, at two hundred dollars, with leave to put fifty dollars in improvements. I never understood I rented under Smith's lease. I had never read it or heard it read at that time. I knew nothing of the Smith lease, except what I had heard. My understanding was Smith paid two hundred dollars. I don't know he paid a dollar. At my first interview with Col. Boggess after I went on the land, some time after April 1, 1874, at his office in Clarksburg, he told me that by the arrangements between him and Smith there was to be a written contract between me and plaintiff for the year I was

to stay there, and we had better fix it up. It was not fixed up then, and was not afterwards. The terms of the contract, as I then learned from Col. Boggess, was that I was to have the place one year from the 1st of April, 1874, at the price of two hundred dollars, and that Mord. Smith was to be security for the rent, and I was to have the privilege of putting fifty dollars' worth of improvements, to be taken out of the rent. I never rented the place for the year beginning April 1, 1875, and ending April 1, 1876, or made any agreement personally with said Boggess about the lease or rent ot the premises for the year prior to it before I entered and never paid any rent for the year, 1874–5 nor did I ever promise to pay any. In the fall of 1874 I came up to Clarksburg to see Col. Boggess about sowing wheat on the land that fall. He told me to go on and sow the wheat, and if I did not rent for the next year I could give the plaintiff one-third of the grain in the Point mill at Clarksburg. The crop was lost by bad weather after it was cut. We then talked about terms for the next year, but failed to agree.

And the defendant, further to maintain the issue on his part, introduced Mordecai Smith, who testified as follows: Defendant in the fall of 1873 got me to see J. R. Boggess and rent the place for him if I could. I soon afterwards saw Mr. Boggess and rented the place for the defendant for one year, from April 1, 1874, to April 1, 1875, at the price of two hundred dollars. The defendant wanted the place for two years, and I asked said Boggess to let him have it for that time, but Boggess said he would not do that, but would let it go on as it had been going. It was agreed between said Boggess and myself that there should be another contract in writing between the plaintiff and defendant, and that I was to sign it as security for the rent. Nothing was said in the aforesaid conversation about the defendant being substituted to my place in my lease with the plaintiff, or his going in under my lease. When I went to see Boggess, for the defendant about the place, I wanted to rent for Bartlett for two years or for one year, and with the privilege of two years, on certain conditions, but he said he could not do that as it had only been for a year at a time, but would let it go on as it had been. Nothing was said by said Boggess or wit-

ness about any day for beginning of Bartlett's time.    There was no contract entered into between said Boggess and me as to defendant going in under my lease.    Before my time was out under my lease from J. J. Allen, as the attorney in fact of the plaintiff, and prior to April 1, 1873, I went to see John R. Boggess if I could stay another year under the former agreement, and he said I could, and I remained there the second year on the same terms as the first year, but there were no repairs to be made but for the first year.

"This being all the evidence given to the jury by the parties to maintain the issue the plaintiff says it is not sufficient to maintain the issue on the part of the defendant, and he therefore demurs thereto, and the defendant says it is sufficient, and joins in said demurer."

Upon the demurrer to the evidence as aforesaid, the court, on the 7th day of January, 1880, gave judgment for the defendant, and from this judgment the plaintiff brought the case to this court upon a writ of error.

The plaintiff in error insists, that the circuit court erred in finding for the defendant upon the said demurrer.

The rule of law in cases of demurrer to evidence is well settled in this State.    In such cases the general rule may be stated as follows :    The demurrant must be considered as allowing full credit to all the evidence of the demuree, and admitting all facts directly proved by, or that a jury might fairly infer, from the evidence ; and as waiving all the parol evidence on his part which contradicts that offered by the demuree, or the credit of which is impeached, and all inferences from his own evidence which do not necessarily flow from it —*Miller* v. *Insurance Co.*, 8 W. Va. 515 ;. *Webb* v. *Dye*, 18 *Id.* 376; *Fowler* v. *B. & O. R. R. Co.*, 18 *Id.* 579 ; *Hansbrough* v. *Thom*, 3 Leigh 147 ; *Horner* v. *Speed*, 2 Pat. & H. 616 ; *Trout* v. *Va. & Tenn. R. R. Co.*, 23 Gratt. 619–638 ; *Richmond & Danville R. R. Co.* v. *Anderson*, 31 Gratt. 812.

Observing the rule thus stated, did the court err in finding for the defendant upon the evidence in this case ?    Taking the evidence both of the plaintiff and the defendant, and there is very little, if any, conflict as to the material facts. The essential enquiry, it seems to me, is whether or not the defendant occupied the relation to the plaintiff of tenant from

year to year.   If he did, then the court  erred in  finding for him, otherwise there was no error.    In determining this enquiry it is  proper first to ascertain, what in law constitutes a tenancy from year to year;  and then to determine,  whether or not the evidence, considered  with reference  to the rule of law just stated, establishes such a tenancy between the plaintiff and defendant.

"If the tenant holds over by consent, given either expressly or constructively, after the determination of a lease for years, it is held to be evidence of  a  new contract without any definite period, and is construed to be  a tenancy from  year to year.    The moment the tenant is suffered by the landlord to enter on the possession of a new year, there is a tacit renovation of the contract for another year; and a half year's notice to quit must be given  prior to  the  end of the  term."   1 Lomax Dig. (side p.) 163 § 17.

In *Emerick* v. *Tavener*, the court says :  "The doctrine seems to be well settled, that when the tenant holds over after the expiration of his lease, and the  lessor  receives rent accruing subsequently to  the  expiration  of the term, or does any act from which it may be inferred that he  intends  to recognize him still as as  such tenant, he  becomes thereby tenant from year to year, upon the conditions of the original lease."  9 Gratt. 236 ;  Taylor's Landlord and Ten. §§ 60–61.

"Although a parol lease  for more than one year is invalid under the statute of frauds in most of the States, yet if a person enters into possession under a parol lease for four years, and holds over into a second year, he becomes a tenant from year to year upon the terms of the parol lease, and so continues as long as he remains in possession without any new or other agreement."    Wood's Land. and Ten. § 26.

"Where a tenant continues in possession after the expiration of his lease without having entered into any new contract, he holds upon the former terms as to time of quitting.   If he assigns his interest, the tenancy of the assignee will also be held to commence on the same  day as the original lease." *Id.* § 36.

"When once this relation of landlord and tenant is established by the act of the parties, it attaches to all who may succeed to the  possession  through  or under the tenant,

whether immediately or remotely, the succeeding tenant being as much bound by the acts and admissions of his predecessor as if they were his own." *Emerick* v. *Tavener*, 9 Gratt. 224.

"A lease being forfeited by the act of the lessee in subletting the premises, the forfeiture will be waived if the lessor with knowledge of the forfeiture accepts rent, or sues out a distress for rent accruing after the forfeiture." *McKildoe* v. *Darracott*, 13 Gratt. 278.

To terminate a tenancy from year to year requires a notice in writing from the party wishing to terminate it to the other party for three months prior to the end of any year—Code, ch. 93 § 5.

Upon these authorities did a tenancy from year to year exist between the plaintiff and defendant? There is no question, it seems to me, that Smith upon holding over after the first year with the assent of the plaintiff became a tenant from year to year. The plaintiff had a right to waive, as she did, the provision in the lease requiring her consent for such holding to be endorsed on the lease. Nor does it matter, that the manner of paying the rent for the second year was modified, so that the whole should be paid in money. This was no change in the lease nor new contract, but merely a collateral arrangement, to which the parties assented, as to the mode of paying the rent. If then Smith had continued in the possession of the leased premises, he could not have terminated his tenancy, except with the consent of the plaintiff, without giving to the plaintiff three months' written notice prior to the termination of some year of the tenancy. And if the defendant as assignee or otherwise took possession of the premises under the Smith lease and thereby, with the assent of the plaintiff became her tenant in lieu of the said Smith, then he necessarily acquired the same rights and took upon himself the same duties and relation, which the lease conferred upon said Smith. The facts show distinctly, that Smith occupied the premises from April 1, 1872, until February or March, 1874, nearly the whole of two rental years; that in February or March, 1874, the defendant took possession and continued on the premises from that time until after the 1st day of April, 1875, but how long after does distinctly

appear. It is evident however from the testimony of defendant that he sowed wheat on the land in the fall of 1874, and harvested the same in the summer of 1875; because he says, referring to said year that, "the crop was lost by bad weather after it was cut." Thus the defendant occupied the premises part of three rental years.

Did the defendant enter and hold the premises under the Smith lease? The defendant testifies, that, in the fall of 1873, he got Smith to see Boggess, the plaintiff's agent, to let him have the land; that before he entered the land he learned from Smith, that he had rented it for him; that he afterwards entered upon said land under Smith, and that he had no conversation or agreement with Boggess, until after he entered under the agreement, which Smith had made and after the first of April, 1874; that at his first interview with Boggess, after he went on the land, he, Boggess, told him, that by the arrangement between him, Boggess, and Smith there was to be a written agreement for the year he was to stay there, and it had better be fixed up; that it was not fixed up then or afterwards. Smith testified, that he rented the place for defendant from Boggess for one year at the price of two hundred dollars; that he wanted the place for two years, but Boggess would not do that, but said he would let it go as it had been going; that it was agreed between Boggess and him, that there should be *another* contract in writing, and he was to sign it as security.

This is the substance of the defendant's parol evidence as to how he entered upon the land. Neither the defendant nor Smith give the terms of any new lease, or testify that it was in any respect different from the Smith lease. The defendant does not pretend, that he made any new contract; and Smith does not state, that any such contract was made. He says, there was to have been another contract, but does not say, it was ever executed; and the defendant says it never was fixed up. Smith says expressly, that Boggess refused to make the agreement he wanted, but would let it go on, as it had been, meaning necessarily, that it should go on under the Smith lease. But aside from what defendant and Smith say, the written receipts for the rent offered in evidence by the defendant show, by their terms, that defendant was hold-

ing under the Smith lease. The first of these receipts, the defendant admits, was prepared by him, and it must be taken to show his understanding of the character of his holding.

It seems to me, taking the evidence of the defendant alone it satisfactorily appears, that he was the mere transferee of Smith and holding by the consent of the plaintiff under the original lease. But if this were not so, and he was holding under a new contract between the plaintiff and himself for one year from April 1, 1874, to April 1, 1875, he by holding over after the first of April, 1875, with the permission and consent of the plaintiff became a tenant from year to year under said new contract. There is no pretence, that the plaintiff in any manner repudiated the tenancy of the defendant for the year 1875–6 ; but on the contrary Boggess, the plaintiff's agent, says, that he as such agent never entered upon the premises or denied the right of defendant to hold over, and that he never demanded the rent, until after the defendant had left the land, after the 1st of April 1876 ; and this is nowhere denied or contradicted by the defendant.

In any view of the defendant's evidence, without considering that of the plaintiff, I think, it is manifest, that the defendant upon holding over after the first day of April, 1875, occupied to the plaintiff the relation of tenant from year to year, and as such was bound to account for the rent for the year from April 1, 1875, to April 1, 1876, unless he had given the plaintiff three months written notice prior to April 1, 1875, of his intention to terminate the lease, which he does not claim to have done.

I am therefore of opinion, that the circuit court erred in overruling the demurrer of the plaintiff to the defendant's evidence and giving judgment against the plaintiff.

It is, therefore, considered, that the said judgment be reversed with costs to the plaintiff in error ; and this court proceeding to render such judgment, as the circuit court ought to have rendered, it is considered, that the plaintiff's demurrer to the defendant's evidence be sustained, and that the plaintiff recover from the defendant two hundred and fifty-eight dollars, the damages ascertained by the verdict of the jury, with

interest thereon from the 1st day of June, 1879, until paid and her costs in said circuit court expended.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.