## CHARLESTON.

### Voss *et al. v.* King.

Submitted September 11, 1893.—Decided December 7, 1893.

1. LANDLORD AND TENANT—ESTOPPEL—LEASE.

In an action by a landlord against his tenant, whether the action be debt, assumpsit, covenant or unlawful detainer, where neither fraud or mistake is shown in the procurement of the lease, no proof of title is required by the landlord, for in such case the tenant is estopped from denying the title of his landlord.

2. LANDLORD AND TENANT—RENT.

A tenant for years, who holds over after the expiration of his term, without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord.

3. LANDLORD AND TENANT.

Where the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original demise.

4. LANDLORD AND TENANT—ADVERSE POSSESSION.

The fact that during the tenancy the title of the landlord has been forfeited for the non-payment of taxes on the land in controversy constitutes no valid defence to an action of unlawful detainer, brought to dispossess the tenant, as the plaintiff is entitled to be placed *in statu quo*, unless, perhaps, the tenant has made a distinct disclaimer, and has been holding adversely for more than three years, or can sustain some other valid defence.

5. VERDICT.

This Court can not interfere with the verdict of a jury under

such circumstances that we are not able to say that, by excluding all the parol evidence of the exceptor in conflict with that of the plaintiff, the verdict was not warranted by the evidence.

John Brannon and Samuel Woods for plaintiff in error cited Code, c. 90, s. 4; 12 Gratt. 473; 3 W. Va. 503; p't 3 Syll.; 14 W. Va. 708; 23 Gratt. 352; 5 Cow. 75; 6 Wend. 666; 15 Gratt. 213; 1 A. K. Mar. 99; 5 Pick. 124; 13 Ill. 239; Tay. Land. & Ten. § 704–706; 3 Sand. 418; Tay. Eject. 556; Code, c. 31, s. 32; 4 Johns. 202; 3 W. Va. 567.

C. W. Russell for defendants in error cited 32 W. Va. appendix 1 *et seq.* 2 Cort. C. C. 439.

English, President :

On the 14th day of December, 1886, an action of unlawful detainer was brought in the Circuit Court of Randolph county by Joseph H. Voss, Susan G. Elder, and Sophy S. Shennard, an infant, who sued by her next friend, Frederick Shennard, against one Patrick King, for the recovery of the possession of a certain tract of land situate in the district of Roaring Creek, in said county of Randolph, described by metes and bounds in the summons, and alleged to contain one thousand acres, and being the same tract of land upon which said Patrick King then resided. The plea of not guilty was interposed, and on the 19th day of September, 1887, the case was submitted to a jury, and, after a portion of the evidence was heard, the plaintiffs took a nonsuit.

On the 23d day of September, 1887, upon motion of the plaintiffs, the non-suit was set aside, and on the 24th day of May, 1888, the case was submitted to another jury, and resulted in a verdict in favor of the plaintiffs, finding that the defendant unlawfully withheld from the plaintiffs that part of the land in the summons mentioned, being about two hundred and seven and three fourths acres, shown upon a plat filed in the case, made by Nicholas Marstiller, surveyor, and beginning at the gum in the summons mentioned, indicated on said plat by the letter A, running south, 19° west, 189 poles, to a chestnut, oak and gum, indicated on said plat by the letter H; thence north, 71° west,

176 poles, to a maple, indicated on said plat by the letter I; thence north, 19° east, 189 poles, to a maple, indicated on said plat by the letter J ; thence south, 71° east, 176 poles, to the gum first mentioned above—except so much of said land, being about seven and one half or eight acres, as is resided upon and occupied by one Michael King, lying northwest of said gum, and next to the line running from said gum to the maple last above mentioned ; said land being at, around and west of Michael King's, and adjoining the fence of Patrick King, the defendant, and cut off from said Patrick King's by a fence.

A motion to set aside the verdict was made by the defendant, which was overruled by the court, and defendant excepted, and a writ of error was taken to this court, and on the 20th day of November, 1889, the judgment rendered upon said verdict was reversed, the verdict set aside, and the cause was remanded for a new trial. On the 6th day of May, 1891, the said case was again submitted to a jury, in the Circuit Court of Randolph county, which, on the 9th day of May, 1891, resulted in a verdict for the plaintiffs. A motion was made to set aside the verdict, and to grant the defendant a new trial, which was overruled, and the defendant excepted, and judgment was rendered upon said verdict, and the defendant obtained this writ of error.

During the trial the plaintiffs, by their counsel, moved the court to give to the jury several instructions, which are marked, respectively, Nos. 2, 3, 4, 5, 7, and 8, to the giving of which instructions the defendant objected ; and his objection was overruled by the court. Said instructions read as follows.

"Instruction No. 2. If the jury believe from the evidence that the defendant, King, having learned of the forfeiture of claimant's title several years before the expiring of his lease after such information, acknowledged himself to be the agent of plaintiffs, as their tenant, they are not to regard the forfeiture as having any effect on plaintiffs' title, unless they believe that subsequently to all such acknowledgments he made an open, consistent, and continuous disclaimer and adverse claims.

"Instruction No. 3. That if the jury, from the evidence,

do not believe that the defendant, King, disclaimed holding under the plaintiffs in or about 1876, and do not believe from the evidence that plaintiffs' title was subsequently to the running out of the lease destroyed, so as to put it out of the power of the plaintiffs to recover it by redemption, they are not to regard the sales of the state as excusing the defendant from restoring the possession to the plaintiffs.

"Instruction No. 4. If the jury believe from the evidence that the defendant practiced a system of deceit towards the plaintiffs, or their agents, with regard to the lands in question, acknowledging their title, while acknowledging that of an adverse claimant, disclaiming their title to one agent, and acknowledging it to his successors and to other persons, for the purpose of maintaining his possession, and without taking the risk of an open, consistent, and continuous disclaimer and adverse claim, they are to regard his disclaimer as having no effect whatever.

"Instruction No. 5. If the jury do not believe that the defendant, King, disclaimed holding under the plaintiffs in 1876, or thereabouts, they are to disregard the evidence tending to show that the plaintiffs' title was forfeited.

"Instruction No. 7. If the jury believe from the evidence that the orders of the board of supervisors of Randolph county do not show that the sheriff of said county returned to said board of supervisors a list of land returned delinquent by him for the nonpayment of the taxes thereon for the year 1865, then any sale made of the lands of said county for the year 1865 for the delinquent taxes thereon would be void, and no forfeiture of the land for that reason did occur for that year.

"Instruction No. 8. If the jury believe from the evidence that the delinquent lists of the land of Randolph county returned by the sheriff thereof for the nonpayment of the taxes thereon for the year 1866 did not have an affidavit of the sheriff thereto, then any sale made by the sheriff of said county of the land so returned delinquent for such delinquency is void, and no forfeiture of the title to the land by reason of such sale could occur for that year."

The defendant, by his counsel, moved the court to give the jury the following instruction, marked No. 3.

"Instruction No. 3. If the jury find from the evidence that the two hundred and seven or two hundred and eight acres mentioned in the agreement of lease made between the defendant and said David Goff as agent for the ancestors of the plaintiffs, is a part of the one thousand acres mentioned and described in the summons in this cause, and that the said one thousand acres was sold by the sheriff for taxes delinquent thereon for the years 1863, 1864, 1865, and 1866, and was purchased by the sheriff for and on behalf of the state in the year 1871, and not redeemed, and that the said taxes for the nonpayment of which said land was returned delinquent were not paid for either or any of said years before such sale, then the title to said land became vested in the state."

To the giving of said instruction the plaintiffs, by their counsel, objected, which objection was sustained, and the court refused to give said instruction.

Now, as several of these instructions refer to the question as to when this disclaimer of a tenancy under the plaintiffs was made by the defendant, it may be well enough to discuss first the question of limitation.

Our statute (Code, 1891, p. 698, c. 89, § 3) provides that "if it appear that the plaintiff was forcibly or unlawfully turned out of possession, or that it was unlawfully detained from him, unless it also appear that the defendant has held or detained the possession for three years before the date of the summons, the verdict shall be for the plaintiff," *etc.*

Barton, in his Law Practice (volume 2, page 1166) says, in speaking of the action of unlawful detainer: "Under the plea of 'Not guilty' almost every defence may be made, and since, to sustain the action, the obligation is upon the plaintiff to prove that the defendant has not unlawfully held possession of the land for three years or more before the commencement of the suit, it follows that the plea of 'Not guilty' puts in issue the question of the limitation to to the action."

While it is true that upon this question the burden of proof is on the plaintiff, yet, when we look to the testimony, we find it conflicting as to the manner in which the defendant was holding the land from the date of the ex-

piration of his lease up to the time of the institution of this suit. These questions of fact were submitted to the jury, and, in order that they should find for the plaintiffs, they must have found that the adverse holding of the defendant had not continued for more than three years before the date of the summons.

As to instruction No. 2 asked for by the plaintiffs, I do not regard the forfeiture of the plaintiffs' title as a very material question as between the plaintiffs and the defendant, as he appears to have been claiming 'under them, and it surely should not have any effect upon the issue presented by the pleadings in this case, unless, after the defendant learned of said forfeiture, and ceased to hold under a lease from the plaintiffs, he made an open, consistent, and continuous disclaimer. If, as the evidence tends to show, he claimed to hold under both Voss and Smith part of the time, and at other times under neither, or rather not under the Voss title, we could not regard such disclaimer as being adverse to the Voss title, and we see no objection to the said instruction No. 2.

As to instruction No. 4, I can see no valid objection to it, as between the plaintiffs and the defendant. The fact that the lands in controversey were forfeited to the state certainly would not confer upon the defendant any right to retain the possession of them, or excuse him from returning the possession. He derived the right to the possession from the plaintiffs, and a temporary loss of title on the part of the plaintiffs would surely confer no right to the possession upon the defendant.

As to instruction No. 4, it is in substance the same as No. 2, and submits to the jury the determination of the facts in regard to the character of the disclaimer of possession under the plaintiffs, which facts are necessarily involved in coming to a proper conclusion as to whether the defendant continued to hold under the plaintiffs, or whether he in good faith claimed to hold adversely, openly, and continuously, and the instruction appears, under the circumstances of the case, to have been proper.

Instruction No. 5 was not objectionable, for the reason that the defendant was not in any manner interested in the

forfeiture of the land, as it conferred on him no better right to hold the possession ; and especially is that so if he made no disclaimer, but continued to hold subject to the rights of the plaintiffs.

Instructions No. 7 and 8 pertain to the regularity of the proceedings pertaining to the forfeiture of the lands in controversy, and the defendant, having no right to redeem, has no right to question the title of the party under whom he claimed, until he had shown a proper disclaimer and some title to the possession in himself. I can not perceive that the defendant was prejudiced by said instructions Nos. 7 and 8 being given to the jury, and the same may be said of instruction No. 3.

Instruction No. 3, asked by the defendant, as we think, was properly rejected, for the reason that, under the circumstances of this case, it was immaterial, and was calculated to mislead the jury. Again, the instruction is too general, and the conclusion deduced in it from the statement of facts is not a necessary sequence. It is not every sale made by a sheriff for the taxes delinquent thereon and purchased by the sheriff for the state, although not redeemed within the year, that confers title upon the state, since the proceeding is under the statute, and irregularities often occur that prevent the title from passing, and again savings are provided for persons laboring under disabilities, who are often allowed to redeem years after the sale has been made.

When this case was before this Court at a former time, 33 W. Va. 236 (10 S. E. Rep. 402) it was held that in an action by the landlord against his tenant, whether the action be debt, *assumpsit*, covenant, or unlawful detainer, where neither fraud or mistake is shown in the procurement of the lease, no proof of title is required by the landlord, for in such case the tenant is estopped from denying the title of his landlord.

Taylor on Landlord and Tenant (volume 1, § 22) says; "A tenant for years, who holds over after the expiration of his term, without paying rent or otherwise acknowledging a continuance of the tenancy, becomes either a trespasser or a tenant, at the option of the landlord. Very slight acts

on the part of the landlord, or a short lapse of time, are sufficient to conclude his election, and make the occupant his tenant. But the tenant has no such election; his mere continuance in possession fixes him as tenant for another year, if the landlord thinks proper to insist upon it." And at section 525, vol. 2, the same author says: "Where the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original demise," *etc.*

As is shown by bill of exceptions No. 1, the defendant moved the court to set aside the verdict of the jury rendered in this cause, and award him a new trial, because the verdict was contrary to the law and the evidence, which motion was overruled, an exception was taken, and all of the evidence was set out in a bill of exceptions. It appears that the lease under which the defendant held the property in controversy from the plaintiffs expired on the 1st day of April, 1876, and it is claimed by counsel for the defendant that the defendant, some time in the month of October following, when asked by plaintiffs to renew said lease for the further period of five years, declined, and told Goff, the agent of plaintiffs: "No; I will not take any more leases under the Vosses. I was told the land was not theirs, and therefore I will not take."

Now, this question of disclaimer on the part of the defendant is very material upon the question as to whether more than three years had elapsed after such disclaimer before the date of the summons, and it is insisted by counsel for the defendant that after this disclaimer nine years elapsed without the defendant in any manner recognizing the relation of landlord and tenant between him and the plaintiffs. Whether the defendant is correct or not in this assertion is a question which was submitted to the jury, and has been ascertained and settled by them against the defendant. Upon this point the testimony was conflicting, and this court has held in the the case of *Tompkins* v. *Kanawha Board,* 21 W. Va. 225, that, "there being conflicting evidence on well-established principles that the judgment will not be reversed, verdict set aside, and new trial granted."

The next bill of exceptions relates to the action of the court in allowing a copy of the record of the proceedings upon a warrant of unlawful detainer brought by Benjamin F. Voss and Robert F. Voss against the defendant, Patrick King, to be read in evidence to the jury, against the objection of the defendant, in which case a judgment appears to have been rendered for the plaintiffs on the 25th day of August, 1869, and the lease from B. F. Voss to the defendant, Patrick King, bears date on the 18th day of July, 1870, less than a year after said judgment was rendered, so that this record and judgment may have been relevant, as showing that the plaintiffs were entitled to the possession of the land at the time the lease was taken from them by the defendant, Patrick King, in July, 1870 ; but, if the record proved nothing, I can not see that the defendant was prejudiced by its introduction.

Our statute provides (section 4, c. 89, of the Code) that "no such judgment shall bar any action of trespass or ejectment between the same parties, nor shall any such verdict be conclusive, in any such future action, of the facts therein found."

Moncure, J., in delivering the opinion of the court in *Olinger* v. *Shepherd,* 12 Gratt. 472, says : "That the defendant in an action of forcible entry can not defend himself by showing that the land in controversy is a part of the public domain has been decided in Alabama (*Cunningham* v. *Greene,* 3 Ala. 127) and in Tennessee, (*Pettyjohn* v. *Akers,* 6 Yerg. 448) and I am not aware that the contrary has been decided anywhere. I can see no reason for a different rule in regard to public and private lands. There is the same reason for the protection of the actual possession against unlawful invasion in both cases. The plaintiff in the action is not suing for damages, but to have possession restored to him ; and when he shows that he has been turned out of possession forcibly, or by one having no right to do so, he has made out his right to restitution, which can not be defeated by any evidence in regard to the title or right of possession. The judgment has only the effect of placing the parties in *statu quo.* It settles nothing, even between them, in regard to the title or right of possession."

Again, as to the receipt signed "John M. Phares, S. R. C.," dated October 22, 1864, to Benjamin F. and Robert F. Voss, for five dollars and twenty four cents, for the redemption of one thousand acres of land returned delinquent for the years 1863 and 1864 by the Sheriff of Randolph county, while in my view of the case, I do not regard it as material, yet I can not see that the defendant was in any manner prejudiced by its introduction.

In view of the fact, then, that in a suit of this character the right to the possession is alone in question, and evidence in regard to the title is only material as an incident tending to show in whom the right to the possession exists, and the defendant in this case having failed to show that the lands in controversy were regularly forfeited and necessarily irredeemable, and the defendant being presumed to continue his holding under the terms of the original demise, and the evidence in regard to his disclaimer being conflicting, and the fact having been settled against him by the finding of the jury, the judgment of the Circuit Court must be affirmed with costs.