# CHARLESTON.

WHITE *v.* SOHN.

65    409
e66   102
66    103

Submitted June 4, 1908.    Decided March 30, 1909.

LANDLORD AND TENANT—*Holding Over—Renewal of Tenancy.*

Where, under a lease for a term of years, with reservation of a monthly rent and stipulation that the tennancy shall not be by the year, the tenant holds over after the term, merely making payment of the monthly rent, which the landlord accepts, the renewal of the tenancy thereby implied is by the month only, not by the year, nor for the original term. (p. 414.)

Error to Circuit Court, Mingo County.

Action by M. Z. White against Eli Sohn. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

STOKES & BRONSON, for plaintiff in error.

SHEPPARD, GOODYKOONTZ & SCHERR and BROWN & WILES, for defendant in error.

ROBINSON, JUDGE:

This case was once before in this Court. 62 W. Va. 80. New trial having been had in the lower court, the case comes here again, but in an entirely different light. The questions are not similar nor are they related to those before involved.

Defendant went into possession of a store-room belonging to plaintiff, situated in Williamson, Mingo county, under a lease containing the following provisions: "It is further understood that this lease is to run for the term of one month from * * * * April 1st, 1904, and to continue for the term of twenty-four months, should the party of the second part so elect, at the same monthly rental and upon the same conditions, provided said party of the second part has complied with all the stipulations in this contract. And it is further understood and agreed that this tenancy is not to be a tenancy from year to year; but that the party of the second part expressly waives any notice whatsoever from the party of the first part of his intention to terminate this tenancy." The rent stipulated in this lease was $60 per month, payable in advance, at the be-

ginning of each month. At the end of the term of one month provided in the lease, defendant elected to continue for the term of twenty-four months. Following the expiration of the twenty-four months, defendant held over, paying each month the monthly rental stipulated in the lease, for an additional period of twelve months, or until April 1, 1907. Payment of the rentals for that period was accepted by plaintiff. On February 15, 1907, plaintiff notified defendant to quit and deliver possession of the premises on April 1, 1907. Defendant did not vacate on that date. Very shortly thereafter, plaintiff instituted his suit—an action of unlawful detainer, demanding possession of the premises and damages for their detention. Despite the notice aforesaid and the institution of this suit, defendant remained in possession of the property eleven months longer, tendering rent at $60 per month. This tender plaintiff refused. Plaintiff testified that the rental value, of the property for those eleven months was $75 per month; that he could have rented it at that price. The foregoing is substantially the case, as presented by plaintiff's evidence.

The only evidence introduced on behalf of defendant was his own testimony to the extent that the rental value of the premises for the eleven months aforesaid was $60 per month. Defendant rested his case upon his demurrer to plaintiff's evidence. In that demurrer plaintiff joined. The jury returned a verdict for the possession of the premises and $875 damages, if the law be for the plaintiff; otherwise, for the defendant. The court held the law to be for plaintiff, and entered judgment on the verdict.

Defendant's contention is that his holding over beyond the expiration of the twenty-four months, and the acceptance by plaintiff of the monthly·payment of rent for such holding over, implied a new contract for another full period of twenty-four months. If this claim be tenable, defendant was entitled, at the original monthly rental, to possession of the premises when the suit was instituted, and the judgment is wrong. On the other hand, plaintiff maintains that such holding over implied only a tenancy by the month, and that, having given said notice to terminate such monthly tenancy, notwithstanding that by the stipulations of the ·original lease no notice was necessary, he was entitled to the possession of the premises after April 1,

1907, and for damages at $75 per month for the eleven months after said date during which he was deprived of the premises by defendant's refusal to surrender the same, as found by the verdict. So we see that the case is narrowed to this question: What term of tenancy was implied or created by such holding over by defendant?

"If the tenant holds over by consent, given expressly or constructively, after the determination of a lease for years, it is held to be evidence of a new contract without any definite period, and to be a tenancy from year to year." 1 Lomax's Digest, side page 163. It may be said to be the generally accepted rule that if a lessee for a year, or for a term of years, holds over after the expiration of his term, by consent of the landlord, the law presumes or implies that the new holding is that of a tenant by the year. Tucker's Com., Book 2, page 81; 2 Minor's Inst. (2nd Ed.) 173; Jones on Landlord and Tenant, § 201; 24 Cyc. 1017, 1031; *Allen* v. *Bartlett,* 20 W. Va. 46; *Voss* v. *King,* 38 W. Va. 607; *Arbenz* v. *Exley,* 52 W. Va. 476. In such case, the implied new holding is by the year, not by periods equal in length to the term of the previous lease. But such presumption or implication may be repelled. 24 Cyc. 1033; Taylor on Landlord and Tenant, § 55; Jones on Landlord and Tenant, § 210; *Williamson* v. *Paxton,* 18 Grat. 475.

The foundation upon which the selection of a year as the unit was based seems to be that an annual rent was reserved in farming leases—the prevalent ones in England from which this doctrine mostly sprung. It was the natural and fair period for that character of lease, including all the seasons, so as to permit sowing, cultivation, harvesting and garnering. But the reasons to sustain the presumption or implication that by a holding over there is a renewal for a year in a lease for agricultural purposes, with annual rent reserved, do not necessarily apply to one of different character, governed, as it should be, by the considerations actually related thereto. "It is often stated that tenancies from year to year have been implied from the earliest times, whenever there was a general holding, without regard to annual rent or other circumstances pointing to a yearly tenancy. * * * * But such a proposition is not borne out by authority." Taylor on Landlord and Tenant, § 55, note 3. It may be noticed that Mr. Minor expressly recognizes the

implication aforesaid as arising from the reservation of a *yearly* rent. 2 Institutes (2nd Ed.) 173.

Arising from the original demise itself there may be other implication than that recognized in the aforesaid generally accepted rule, indicating a renewal for a term shorter than the period of a year, where the tenant holds over by consent of the landlord. So it is said: "The doctrine that where the lessee holds over and the lessor receives rent accruing after the expiration of the term, a new tenancy arises for a further term, subject to the covenants and conditions of the original lease, is true as a rule; and the reason is, that the receipt of the rent is considered as an acknowledgment of a subsisting tenancy. But it does not follow that the new term must necessarily be a year. Where the former lease was for less than a year, as a quarter or a month, or where the term, though extending to a year or more, was composed of such periods, there is no ground for holding that the new term, presumed from the holding over of the tenant and the receipt of the rent by the landlord, extends beyond one of the periods of the original tenancy." McAdam on Landlord and Tenant, § 39. And another high authority puts it this way: "So the unit is not any particular period of time, but the rent period whatever that may be in any given case." Jones on Landlord and Tenant, § 215. Accordingly it has been held: "If, on the expiration of a lease for a year or for years, with rent payable monthly, the tenant retains possession of the premises and pays the same rent each month, this does not in law create a new term for a year, without any agreement to that effect, but only creates a tenancy from month to month." *Skaggs* v. *Elkus,* 45 Cal. 154. The reservation of rent, with its payment at stated periods, is, in the absence of express stipulation as to the length of the holding over, one of the principal criteria to determine the duration of the term. Jones on Landlord and Tenant, § 215; *Coffin* v. *Lunt,* 2 Pick. 76; *Rich.* v. *Bolton,* 46 Vt. 84; *Hurd* v. *Whitsett,* 4 Col. 77.

The acts and conduct of the parties in reference to the holding over may control over the implication expressed in the generally accepted rule to which we have referred. Illustrative of this fact is the enunciation in *Shipman* v. *Mitchell,* 64 Tex. 174: "If, however, at or before the expiration of the former lease, the tenant was informed that he would not be permitted,

after the expiration of that lease, to occupy the rented premises otherwise than as a tenant from month to month, and not for a year, then no contract that he should occupy the property for a year could be implied, for an implied contract derives its existence from the presumed intention of the parties, induced by and arising from their course of dealing, and can never be presumed, if it be shown that the tenant was informed by the landlord that the holding after the expiration of the term, if continued, must be from month to month." To the same effect is *Blumenberg* v. *Myres,* 32 Cal. 93. There we find: "But when the parties have made an express agreement relating in any respect to the new tenancy, then in that respect there is no room for implication. If the parties specify the rent, the time of payment, the term, or any of the usual covenants or conditions of a lease, whether they agree or disagree with the terms of the former lease, they enter into the new lease and determine the rights of the parties while the tenant is holding over. The receipt produced by the plaintiff showed the payment by him of four hundred dollars for one month's rent, thus establishing both the rent and the term. He has no better right to recur to the former lease, in disregard of the time, than of the rent specified in the receipt."

So we see that there is not always an implied renewal by the year, when the tenant for a year or a term of years holds over by consent of the landlord. It may depend upon other things, among them being the rent periods fixed in the original lease and agreements and conduct of the parties in reference to the holding over. And it is not consistent with reason and authority that any implied renewal of a tenancy by a holding over is periodically longer than a year. The authorities say, in effect, that if the original demise be for a year, or for a term of years, with annual rent reserved, there is an implied renewal by the year, unless such implication is repelled by considerations more controlling than that upon which it is sought to be based.

Whether defendant, in the case before us, was originally a tenant by the month, with the right to elect to continue as such until twenty-four months expired, or was a tenant for a term of the twenty-four months or two years, we really need not decide. If by the original lease he held by the month, the implied renewal by his holding over could be but by the month.

We shall, however, accept his claim that he held by the lease originally for a term of two years. This fact being so, and nothing else controlling, the implied renewal by his holding over would be only by the year. But, by the very terms of that original lease which he invokes to sustain an implied term, he cannot be a tenant by the year. He therein stipulated not to be. And surely, if the lessor required a stipulation against the lessee's being a yearly tenant, we are not, in reason, justified in making that lessee a biennial tenant, simply because the original lease permitted him to remain in possession of the premises for two years. If, in sense and right, we could do so, there is no authority, as we have said, nor is there reason, justifying, by defendant's holding over, an implied tenancy by periods of greater length than a year. What term then, had defendant by his holding over and paying monthly rental? Plainly he was thereby only a tenant by the month. He had stipulated that he should not be in by the year. Similarly to *Shipman* v. *Mitchell, supra,* the tenant had notice, by this stipulation, before the expiration of the original lease, that he would not be permitted to occupy the premises as he claims the right to do. In his claim of implied renewal he is bound by that stipulation; for he must invoke the original lease, in which that stipulation is contained, to raise the implication upon which he relies. The law gives no implication for a holding by periods longer than yearly ones; by the year, under his agreement, defendant cannot hold; therefore, he can be nothing but a tenant by the month. In his original lease a distinctive monthly rental was reserved, not an annual rental, nor a rental payable specifically by an aliquot part of a year. A month, without relation to a year, was the rent period. He can be that only which the unit of the rent periods and his payment of a monthly rent in fact made him—a tenant by the month; if, indeed, the acts and conduct of the parties in the payment and acceptance of one month's rent, thereby fixing such term, at the first of his holding over, did not make him such.

Since, by the holding over, defendant could be nothing but a tenant by the month, he was plainly in default when this suit was begun. After the termination of his aforesaid monthly tenancy, on April 1, 1907, he was a trespasser on plaintiff's premises, for which actual damages could be recovered. Those

damages were sufficiently proved to be $875 for the eleven months that he continued as such trespasser. The circuit court did not err in overruling the demurrer to the evidence and entering judgment for plaintiff on the verdict.

It is said that the case was not tried by a legally constituted tribunal. It was tried before a special judge. The order shows his election to preside in lieu of the regular judge. The record shows no objection to his acting. That objection cannot be made here for the first time, since there is nothing to show that he was illegally elected. *State* v. *Low,* 21 W. Va. 782; *Jarrell* v. *French,* 43 W. Va. 457; *State* v. *Newman,* 49 W. Va. 724; and other cases.

It is also insisted that the record does not establish the fact that the premises were within the jurisdiction of the court, Mingo county. The evidence clearly shows that the premises sought to be recovered are located in Williamson. Counsel in interrogation of witnesses and the witnesses in their answers referred to the premises as being so situated. The courts of this state judicially know that Williamson is in Mingo county.

The judgment is affirmed.

*Affirmed.*