ELKINS NATIONAL BANK *v.* PAUL H. NEFFLEN

(No. 8367)

Submitted October 20, 1936. Decided November 24, 1936.

HATCHER, PRESIDENT, and KENNA, JUDGE, dissenting.

*A. E. Fiorentino,* for plaintiff in error.
*E. L. Maxwell,* for defendant in error.

WOODS, JUDGE:

This is an action of unlawful detainer. The tenant, who had held over after the expiration of his lease, at-

tacks a judgment of ouster on the theory that his tenancy was on the basis of a six months' term, entitling him to three months' notice to vacate, whereas he was given only one month's notice.

Sometime before the expiration date (July 1, 1933) of a three-year lease, the tenant notified the plaintiff bank, his landlord, by letter, that he would not be able to retain possession of the property at the stipulated rental after the expiration date, but that if the landlord would agree to a considerable reduction of rent, on a monthly basis, without a yearly lease, he would be glad to consider the proposition. The landlord, through its conservator, on June 15, 1933, wrote the tenant, acknowledging receipt of the latter's communication, and stating:

"We have discussed this matter in person several times and on yesterday we agreed that the rental should be $60.00 per month for a period of six months, with an option to you to *extend* it for another six months at the same rate per month; the above arrangement is conditioned upon the definite understanding, however, that while I am at present in position to make a rent arrangement with you, I can only express to you an opinion that you will not be disturbed in your tenancy by a change of my status with the Bank, if it occurs during the period of six months, and that I can give you no assurance that you will be able to extend the rent arrangement for an additional six months if there is a change in my status with the Bank."

The lessee, in accordance with a request contained in the foregoing letter, entered a notation at the foot of a copy thereof, furnished for the purpose, that he agreed to the "foregoing arrangement to become effective July 1, 1933, subject to the conditions above stated." The lessee, on July 1, 1933, and the first of every month thereafter, up to and including May 1, 1935, tendered, and the landlord accepted, the $60.00 rental. On April 29, 1935, the landlord gave the tenant written notice to vacate at the expiration of one calendar month from

May 1, 1935, and on June 1, 1935, and thereafter has refused the tendered monthly rentals.

Except for a possible change in the control of the bank within the initial six months' period, the lease was for all practical purposes, at the tenant's option, a one year's lease, terminating July 1, 1934. The holding over, therefore, began July 1, 1934, and has continued since that time.

The authorities all recognize that the nature of the lease and the wording thereof, have a bearing on whether the holding over is from year to year, or month to month. "The controlling element in determining this question is the nature of the rent reserved or paid. If a yearly rent is reserved or paid, it is then generally considered as a tenancy from year to year, even though the payments are made in installments such as quarterly or monthly; if, however, the rent is not a yearly rent, but is for a lesser period, such as a monthly rent, then the tenancy is deemed to be from month to month, irrespective of the length of time it may in fact exist." 16 R. C. L. 616. The tenant stresses the fact that the lease is for a six months' period, with right to extend for an additional term; the landlord, calls attention to the absence of mention of a yearly or semi-annual rent.

In *Kaufman* v. *Mastin*, 66 W. Va. 99, 66 S. E. 92, 25 L. R. A. (N. S.) 855, the pertinent part of the lease, which involved property to be used as a drug store, provided: "This lease is to continue for one year from the first day of May, 1904. The rent to be paid for said room above described is $50.00 per month, payable at the last of each month respectively." In that case, it was held that: "A tenant's holding over and paying monthly rent beyond the term of a lease for a year, relating to urban premises, in which lease rent is reserved by the month and is payable at monthly periods, does not, alone, imply a renewal by the year. A renewal of the tenancy by the month is hereby implied."

While it is true that the foregoing case is based primarily upon *White* v. *Sohn*, 65 W. Va. 409, 64 S. E. 442,

in which the lease contained a clause that "this tenancy is not to be a tenancy from year to year," yet the authorities cited and discussed in *White* v. *Sohn, supra,* amply support the holding in *Kaufman* v. *Mastin, supra.* In other words, the position taken by this Court in the last-mentioned case is based on substantial authority.

The fact that the property involved was urban and used for store purposes was not inconsistent with the implication of month to month tenancy raised by the nature of the rent reserved in the lease. *Backus* v. *Sternberg,* 59 Minn. 403, 61 N. W. 335; 10 Am. & Eng. Ency. Law, 201. We do not see wherein the option to extend for an additional six months alters the situation. The excerpt from the letter of the conservator to the tenant, heretofore quoted, shows that the term was only for six months, doubt being expressed therein, on account of the fact that the bank was in the hands of a conservator, as to the option to extend for a like period. In any event, if the option was taken advantage of, which we assume was the case, it was at "the same rate per month," and not on the basis of rent for six months or a year.

In view of our construction of the lease of June 15, 1933, it is clear that the tenant was given proper notice, in accordance with the provisions of Code 1931, 37-6-5, and the landlord was entitled to invoke the aid of a court of law to have him ousted from the premises. The judgment of the circuit court of Randolph county is therefore affirmed.

*Affirmed.*

LITZ, JUDGE, concurring:

Granting that the decision is contrary to the weight of authority, it is, nevertheless, but a re-affirmance of the rule enunciated in *White* v. *Sohn,* 65 W. Va. 409, 64 S. E. 442 (March 30, 1909), and *Kaufman* v. *Mastin,* 66 W. Va. 99, 66 S. E. 92, 25 L. R. A. (N. S.) 855 (November 2, 1909), which has remained unchanged by subsequent judicial ruling or legislative enactment for more than a quarter of a century. This rule, we believe, has been consistently followed in West Virginia. *Arbenz* v.

*Exley, Watkins & Co.*, 52 W. Va. 476, 44 S. E. 149, 151, 61 L. R. A. 957, involved an unsealed written lease for more than five years at a yearly rental payable monthly. In determining that the occupancy and payment of rent by the lessee thereunder constituted a tenancy from year to year, the court said: "The lease covenants for rent of '$700 per annum for each and every year commencing from and after the 1st day of April, 1896, payable in equal monthly installments.' This is a yearly rent, payable monthly, and does not make it a monthly tenancy, in face of another clause making the term begin first of January." In *Whalen* v. *Manley*, 68 W. Va. 328, 69 S. E. 843, 844, where the court was called upon to decide whether a holding over after the termination of a specified term of twelve months constituted a "renewal" of the lease, stated: "Reason as well as the weight of judicial authority justifies us in holding, as the circuit court did, that simply holding over after the expiration of a lease containing a mere covenant to renew, and paying rent according to the terms of the old lease, does not amount to an election to renew, but constitutes the tenant a tenant from month to month or year to year, *depending on the terms of the lease as to rent or rental periods.*" *Pythian Lodge* v. *Smith*, 94 W. Va. 718, 120 S. E. 895, 896, involved a written lease of a store room for five years (at a rental of fifty dollars per month payable in advance), granting the lessee "the preference in leasing at the end of this contract in case said room is for lease." It was decided that a holding over and payment of rent after the end of the five years constituted a tenancy from month to month. See *Hans Watts Realty Co.* v. *Sales Co.*, 107 W. Va. 80, 147 S. E. 282, in which the pertinent West Virginia cases are considered. *Allen* v. *Bartlett*, 20 W. Va. 46, and *Voss* v. *King*, 38 W. Va. 607, 18 S. E. 762, involving leases of farm lands at yearly rentals, are not in conflict with the doctrine of the principal case.

It is said in the dissenting note that *Skaggs* v. *Elkus*, 45 Cal. 154, cited in *White* v. *Sohn*, "was discredited by the California court itself in the later case of *Cowell* v.

*Snyder*, 15 Cal. App. 634." A comparison of the two cases reveals (1) that the latter was decided by an inferior court, and (2) that the facts are different. The first case involved a lease for "the lower story of the El Dorado building, in Sacramento, at a *monthly* rent of two hundred dollars, payable monthly in advance." The subsequent case involved a lease of land for farming purposes and the manufacture of lime at an *annual* rental of three hundred dollars.

HATCHER, PRESIDENT, dissenting:

In the final analysis, the majority opinion rests solely on *Skaggs* v. *Elkus*, (1872) 45 Cal. 154. True, the majority opinion quotes 16 R. C. L. 616, but that text cites only *Kaufman* v. *Mastin, supra,* which in turn refers to the authorities cited in *White* v. *Sohn, supra,* and *Skaggs* v. *Elkus* is the reliance of *White* v. *Sohn.* The lease in the latter case was for two periods of one and twenty-four months, respectively, at a monthly rental of $60.00; and the lease expressly provided that the tenancy was not from year to year. The opinion said: "The law gives no implication for a holding by periods longer than yearly ones; by the year, under this agreement, defendant cannot hold; therefore, he can be nothing but a tenant by the month." Thus *White* v. *Sohn*, was decided on the terms of the lease contract itself, and the decision is correct. But the opinion went further and gratuitously evolved the rule now followed by the majority, that the renewal implied by a permissive holding over, is for the unit period of the preceding rental payments. The opinion cited as authority for the rule, two text books, McAdam and Jones, and cases from four jurisdictions, Massachusetts, Vermont, Colorado and California. I respectfully submit that the texts cited run counter to, instead of with the rule. In the Massachusetts and the Vermont cases cited, the respective tenants had never held except as tenants at will, so those two cases do not nurture the rule. In the Colorado case cited, the question arose: what was the initial rental term? And on that question, and not on a tenancy implied from hold-

ing over, the court said that in the absence of an express agreement, the stated period of rental payments was a principal criterion. In the implication arising from the tenant holding over, the Colorado court unequivocally opposed the rule of *White* v. *Sohn,* saying: "Where the term is for a shorter period than a year, according to the current of authorities, both English and American, the holding over is implied to be for a like term." The California case cited, *Skaggs* v. *Elkus, supra,* alone sponsors the rule of *White* v. *Sohn,* and alone constitutes what the majority opinion terms the *ample support* of that rule. *Skaggs* v. *Elkus,* however, was discredited by the California court itself in the later case of *Cowell* v. *Snyder,* (1911) 15 Cal. App. 634, which held: "Where the lessors accepted money past due on the former rental account during a current year, and after the expiration of another year did likewise and continued to accept money any time at the former rates, by so doing, they adopted the defendants as continuing tenants, and estopped themselves from asserting any change in the lease contract."

In turning to *Skaggs* v. *Elkus, White* v. *Sohn* departed both from former decisions of this court, and from the great weight of authority. *Voss* v. *King,* 38 W. Va. 607, 18 S. E. 762, held: "Where the landlord suffers the tenant to remain in possession after the expiration of the original tenancy, the law presumes the holding to be upon the terms of the original demise." This doctrine had been "well settled" in the Virginias for many years prior to *White* v. *Sohn.* See *Emerick* v. *Tavener,* (1852) 9 Gratt. (50 Va.)· 220, 236, 58 Am. Dec. 217; *Allen* v. *Bartlett,* 20 W. Va. 46. Accord: McAdam, Landlord and Tenant (5th Ed.), secs. 31 and 41; Tiffany, *idem,* sec. 209-e; Jones, *idem,* sec. 215; 35 C. J., *idem,* secs. 166, 174.

*Kaufman* v. *Mastin,* was annotated in 25 L. R. A. (N. S.) 855, *et seq.* The annotation says: "By the weight of authority a tenant holding over after the expiration of a lease for a term of a year or more becomes a tenant from year to year, and not a tenant from quarter to

quarter, month to month, etc., even though the rent is in the lease made payable quarterly, monthly, etc." The annotation naively observes: "The distinction made in *Kaufman* v *Mastin,* \* \* \* does not appear to have been observed in many of the cases." As far as I can find, the distinction has not been observed in any case anywhere since *Kaufman* v. *Mastin.* And except as herein noted, I have found no authority at all qualifying a period tenancy held over, merely because the rent was payable by some aliquot part of the term, as by the month. An "all-fours case" is *Bright* v. *McOuat,* 40 Ind. 521, which holds as follows: "Where a tenancy is by agreement for six months, and by this agreement, at the expiration of this term, the right is reserved in the tenant, to hold for a longer term, the landlord is entitled to possession at the end of the term, unless the tenant exercise his privilege to hold for a period to be fixed by him; if he hold over and at the end of a month pays the rent for that time, and the landlord receives the rent, the tenant not having fixed the term of the new tenancy, it becomes one for six months, subject, to the same covenants and conditions as the previous tenancy. Upon the holding over for another month at the expiration of the second tenancy, another term of six months is entered upon, there being no express contract as to time."

Because the majority opinion is based on unsubstantial authority, because the opinion opposes the current of American and English decision, and because the opinion contravenes the doctrine long established in the Virginias, before *White* v. *Sohn,* I respectfully dissent. Judge Kenna authorizes me to say that he joins in this dissent.