# Richmond

Moskin Stores, Incorporated, etc. v. J. R. Nichols, Suing for the Benefit of A. R. Long and S. H. Williams, Trustees.

November 15, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and Chinn, JJ.

The opinion states the case.

*C. S. McNulty* and *Morris L. Masinter*, for the plaintiff in error.

*Samuel H. Williams* and *J. Samuel Sherertz*, for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

J. R. Nichols, for the benefit of A. R. Long and S. H. Williams, trustees, brought this action by notice of motion against the defendant, Moskin Stores, Incorporated, to recover the principal sum of $1,350, due, as alleged, for rent of a certain building situated in the city of Roanoke. There was a trial by a jury which resulted in a verdict for the plaintiff. A motion made to set aside the verdict was overruled, and judgment was accordingly entered on the verdict for the principal sum of $1,350.

It is assigned as error that the court erred in refusing to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence, and because of error in giving and refusing instructions.

By stipulation of counsel the following facts are admitted:

"That plaintiff owns the premises known as No. 30 Campbell avenue, West, Roanoke, and leased the same under date of April 30, 1921, to Electric Maid Bake Shop, Incorporated, for eight years, with the option to extend for an additional period of five years from April 30, 1929, the rent during the period of extension to be $450 per month; that this lease was duly assigned to Ansell-Lapkin Stores, Incorporated, April 4, 1923, by Electric Maid Bake Shop, Incorporated, for a consideration of $10,000; that copies of both the foregoing documents may be filed in evidence without further proof; that notice to extend this lease was duly given to and accepted by the plaintiff, and that Ansell-Lapkin Stores, Incorporated, trading as A. & B. Stores, occupied the premises and paid the rent and on November 1, 1930, the defendant took over this store; that the defendant vacated the premises on or about April 1, 1933, and that the rent on said store for the months of April, May and June, 1933, has not been paid to the plaintiff by the defendant, these installments being respectively due as of April 30th, May 31st and June 30, 1933; that obligations aggregating $52,500 held by Lynchburg Female Orphan Asylum and Jones Library Association are secured by deed of trust on the premises in question and that the rents thereon

have been assigned to A. R. Long and S. H. Williams, the trustees under said deed of trust, to be used in the payment of interest on said debt, taxes and insurance on the premises."

The other facts shown in the record will be hereafter adverted to.

The decisive question in the case is, was the defendant a sub-tenant only (as contended by it), having privity of contract or estate solely with the Ansell-Lapkin Stores from whom it acquired the lease; or was defendant, as contended by plaintiff, an assignee of the said lease, occupying the relation of tenant with the plaintiff as its landlord?

From a careful consideration of the record, our conclusion is that the defendant was in law and fact a tenant of plaintiff and liable for the rent sued for.

In the contract of lease by and between Electric Maid Bake Shop, Incorporated, the original lessee, and Ansell-Lapkin Stores Company, Incorporated, all right, title and interest is transferred except that the transferor reserved the right, in the event of the failure upon the part of the transferee to pay the additional rental premium contracted for, to proceed under the provisions of section 5448 of the Code, which provides the machinery for the ousting of and collection of rent from a delinquent tenant. It, however, appears as an undisputed fact that at the time defendant took over the lease of Ansell-Lapkin, the premium or rental of the transferor had already been paid and the extension provided for in said lease of five years had already begun.

It is thus apparent that Ansell-Lapkin was holding under the lease from Electric Maid Bake Shop without reservations when it transferred its interests to defendant.

In 1 Minor on Real Property (2d Ed.) p. 540, the correct rule is thus stated:

"The fact that the lessee, in making the transfer to another, reserves a rent greater or less than he himself has stipulated to pay the landlord for the premises, or that he reserves a right of re-entry for breach of new conditions imposed by him, does not prevent the transfer from being

treated as an assignment, at least so far as concerns the original landlord, if the interest transferred by the lessee is his whole interest in either the entire land or in part thereof."

See, also, Tiffany on Landlord and Tenant, p. 908; 35 C. J. p. 988; 16 R. C. L. 824.

In the construction of a lease such as the one under consideration, the polar star is, Has the lessee parted with his entire interest in the premises? If he has done so, the transfer of the lessee's entire interest in the term creates a privity of estate between the landlord and tenant of which the landlord may avail himself.

To sustain that rule *Stewart* v. *Long Island Railroad Company*, 102 N. Y. 601, 8 N. E. 200, 201, 55 Am. Rep. 844, is most frequently cited. It appears in that case that in January, 1873, Stewart entered into a contract with the Central Railroad Company, reciting that he had built a railroad upon lands partly owned by him and partly by the Central Company, and that it was intended by Stewart to lease the constructed lines to the party of the second part. The contract then grants and demises the railroad for a term of fifty years, with the provision that at the expiration of the term the lessee covenants to pay to the lessor the principal sum expended on the road, and that upon such payment the lessee shall become vested with the fee simple of the railroad property. Until the payment of the principal sum the rent was to continue and the lease contained the usual provision for re-entry for non-payment of the rent or breach of covenant.

In June, 1874, the entire interest of the Central Company under this lease and contract became vested in a second railroad, to whom the contract was assigned, and in May, 1876, the latter company entered into an agreement with the defendant. By that instrument the second company leased to the Long Island Railway Company its whole railroad, for a term of ninety-nine years, upon an increasing rental. This agreement provided for a re-entry upon breach of covenants and a surrender to the lessor at the

end of the term. The question before the court upon a suit by the original lessor against the transferee for rent, was whether the last named transfer operated, as between the original lessor, Stewart, and the defendant, as an assignment of that entire term, and thus established a privity of estate between them which rendered the defendant liable to the original lessor, or whether it was, as between the parties, a mere sublease, under which the defendant was liable only to its immediate lessor.

In the opinion of the court we read: "Where a lessee assigns his whole estate, without reserving any reversion therein in himself, a privity of estate is at once created between his assignee and the original lessor, and the latter has a right of action directly against the assignee, on the covenant to pay rent, or any other covenant in the lease which runs with the land; but if the lessee sublets the premises, reserving or retaining any such reversion, however small, the privity of the estate is not established and the original landlord has no right of action against the sub-lessee, there being neither privity of contract nor of estate between them. Where a lessee of land leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sublease. The question has frequently, and probably most generally, arisen between the lessee and his transferee, and much confusion will be avoided by observing the distinction between those cases and cases where the question has been between the transferee and the original landlord. In the latter class of cases the rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument as an assignment so far as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor, with a power of re-entry for non-payment, nor by its assuming, by the use of the word 'demise' or otherwise, the character of a sublease; and the assignee, so long

as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. * * * (Citing cases.)

"But, as between the original lessee and his lessee or transferee, even though the original lessee demises his whole term, *if the parties intend a lease,* the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them.

"The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term, is to divest him of any reversionary right, and *render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the second demise if they so intended."* (Citing cases. Italics supplied.)

The italicized language is, in our view, particularly applicable to the facts of the case at bar. After the defendant had acquired the interest of Ansell-Lapkin in the demised premises, it wrote the following letter:

"It is with extreme pleasure that we are able to advise we have this day succeeded in concluding arrangements to take over the Ansell Lapkin Stores Company, Incorporated's, interest under lease drawn as of April 30, 1921, between yourself and the Electrik Maid Bake Shop, Incorporated, whose interests in turn were assigned to Ansell-Lapkin Stores Company under date of April 4, 1923. In accordance therewith, five year option has been exercised as per your letter of June 30, 1928.

"We have in our files the original lease together with assignment from Electrik Maid Bake Shop, Incorporated, to Ansell-Lapkin Stores Company, Incorporated, as well as notice of their intention to exercise the extension thereunder.

"Accordingly we are enclosing our check for $900 to cover past due rentals to November 1st together with check for $450 representing our rent for the month of November.

"We wish to say as always it is our main desire and

policy to pay rentals promptly on the first of each and every month as we have learned this is one way of maintaining pleasant relations with our landlord. We trust our relationship in this instance will prove mutually pleasant and profitable and we can assure you we will appreciate any cooperation you can give us."

From the repeated use of the term "assignment" in the letter and the distinct recognition of the plaintiff as the landlord of the defendant and the acquiescence of plaintiff in the relationship by receiving rent direct from defendant for a long period of time, it is apparent that the parties intended the creation of a landlord and tenant status.

The further fact that the apparent relation of landlord and tenant which had existed for a period of more than two years, was not questioned by defendant until there was a refusal by plaintiff to reduce the rent is entitled to consideration in the determination of the question.

From what has been said, the action of the court in giving and refusing instructions becomes immaterial, and it is unnecessary to discuss the second assignment of error.

We therefore affirm the judgment of the trial court.

*Affirmed.*