TIDEWATER INVESTORS, LTD., Appellant,

v.

UNITED DOMINION REALTY TRUST, INC., f/k/a Old Dominion Real Estate Investment Trust, John P. McCann, Trustee of Old Dominion Real Estate Investment Trust, and C. Harmon Williams, Jr., Trustee of Old Dominion Real Estate Investment Trust, Defendants,

and

Willow Oaks Shopping Center, Incorporated and Harrison and Lear, Incorporated, Appellees.

No. 85–1779.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1986.

Decided Nov. 5, 1986.

294

Joseph L. Lyle, Jr. (Pickett, Lyle, Siegel Drescher & Croshaw, on brief) for appellant.

Janet I. Farquharson (Thomas R. Watkins, Patten, Wornom & Watkins, on brief) for appellees.

Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The plaintiff appeals from the district court's summary judgment for the defendants in this landlord-tenant dispute. The plaintiff, Tidewater Investors, Ltd., sued its landlord for, *inter alia,* breach of the covenant of quiet enjoyment because of its dispossession by the landlord. The district court dismissed Tidewater's claims, finding that it had no standing as a subtenant to sue the landlord for breach of the original lease. Because a sublease to Tidewater's assignee gave it the entire interest of the original lease executed between the landlord and the first lessee, however, we find that Virginia law gives it standing to sue. We vacate the judgment of the district court and remand.

In June 1973, Willow Oaks Shopping Center leased the premises to Ralston Purina for a term of 20 years. The lease expressly required the tenant to operate a "hamburger oriented restaurant business" and put no restrictions on the lessee's right to sublease the premises or assign the lease.

Ralston Purina at once assigned its rights under the lease to Foodmaker, Inc., one of its subsidiaries. Foodmaker in turn subleased it to Life Financial Inc., II, Inc., which subleased it to Mid-Atlantic Fast Food, Inc. to operate a Wuv's hamburger restaurant. Subsequently, Life Financial assigned its rights under its sublease agreement with Foodmaker to Tidewater, which, in October 1982, evicted Mid-Atlantic for nonpayment of rent. All of the pertinent agreements contained the same covenant of required use as in the original lease.

Shortly after Tidewater evicted Mid-Atlantic, Willow Oaks re-entered the premises, alleging a default of the covenant to maintain a hamburger restaurant on the premises. It took possession by changing the locks and refusing to issue Tidewater new keys. It admits that it changed the locks 14 days after the vacancy occurred, which, on its face, would appear to be a violation of the minimum of 30 days given under the lease to cure any such default. The premises thereafter remained vacant until the fall of 1984.

Tidewater alleges that Willow Oaks, its agent Harrison and Lear, Inc., and Tidewater's grantee, United Dominion, interfered with its ability to put another tenant in the premises by locking it out of the premises, wrongfully informing prospective tenants of the premises' availability for lease, and discouraging and threatening a prospective subtenant, Fast Food, which

eventually sublet from Tidewater. Tidewater brought this action, alleging a breach of contract by Willow Oaks and United Dominion (formerly known as "Old Dominion Real Estate Investment Trust"), tortious interference with its contractual rights, and malicious and willful conspiracy to damage Tidewater.

The district court dismissed Tidewater's breach of contract claims, ruling that as a subtenant it enjoyed neither privity of contract nor privity of estate with the defendants and therefore had no standing to sue them. The court also dismissed Tidewater's other claims for lack of evidence to which action of the court exception is not taken on appeal.

The reasoning of the district court was only partially correct as it held that a sublessee has neither privity of contract nor of estate with the original lessor and therefore generally has no standing in an action against the lessor under a lease. See *Moskin Stores, Inc. v. Nichols*, 163 Va. 702, 705, 177 S.E. 109, 110 (1934). A sublease, however, operates as an assignment where the original lessee has parted with his whole estate or term in subletting to its subtenant. *Moskin*, 163 Va. at 707, 177 S.E. at 110–11, citing with approval *Stewart v. Long Island Railroad Company*, 102 N.Y. 601, 606, 8 N.E. 200, 201 (1886). Such a subtenant is rendered an assignee even where the agreement is labeled a sublease and where the agreement provides for re-entry by the original tenant for non-payment. *Moskin*, 163 Va. at 707–08, 177 S.E. at 111.

1 *Minor on Real Property*, 2d ed., p. 540–41, cited by the court in *Moskin*, is in accord: "The fact that the lessee, in making the transfer to another, reserves a rent greater or less than he himself has stipulated to pay the landlord for the premises, or that he reserves a right of re-entry for breach of new conditions imposed by him, does not prevent the transfer from being treated as an *assignment*, at least so far as concerns the original landlord, if the interest transferred by the lessee is *his whole interest* in either the *entire land* or in *part*

*thereof.* (Footnotes omitted; italics in original) We add that the annotation in 99 ALR at p. 220 states this as the general rule with little dissent.

After discussing Minor, the Virginia court, in *Moskin*, followed *Stewart*, quoting the following paragraph as particularly applicable to the facts of that case:

"The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term, is to divest him of any reversionary right, and *render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the second demise if they so intended.*" (Italics supplied by the Virginia Court) 177 S.E. at 111.

Here, Foodmaker's lease agreement with Life Financial, subsequently assigned to Tidewater, contains essentially identical terms and conditions as its original lease with Willow Oaks. Even though Tidewater's sublease is labeled as such and provides for a right of re-entry in the event of a default, Foodmaker parted with its entire estate under the original lease since it subleased the entire term at the same rental rate and under the same restrictive covenants. Tidewater's sublease from Foodmaker, then, operates as an assignment of the original lease, creating privity of estate between Willow Oaks and Tidewater, and gives Tidewater standing to sue directly for breach of contract.

We emphasize that this is not the more frequent case of a subtenant paying rent to the original tenant who then does not pay rent to the landlord. This is a case more nearly akin to *Moskin*. In *Moskin*, following a subletting of the premises, the subtenant defaulted in rent, paying no one. The Virginia court treated the subletting as an assignment, even if it were not in fact, and permitted the landlord to sue the subtenant directly for the rent. In our case, it is alleged that the subtenant breached no condition of the lease, yet the landlord entered without authority and dispossessed the subtenant by locking him out. No reason appears to treat this case differently

than the Virginia Court treated the parties in *Moskin*. If the landlord is able to sue the tenant directly, as in *Moskin*, certainly the tenant should be able to sue the landlord by the same token.

Accordingly, we vacate the district court's judgment so far as it concerns the breach of contract claim against Willow Oaks and Harrison and Lear and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.[1]

---

1. The district court, in the context of United Dominion's cancellation of the lease and dispossession of Fast Food, held that in operating a hamburger business for a period of 2 years was a defect which could not be cured under the terms of the lease. The district court did not consider, however, whether or not Tidewater had been unlawfully locked out of the premises by Willow Oaks. If we accept the record as it appears before us that Willow Oaks locked Tidewater out of the premises without notice or any period to cure, we would be required to come to the opposite conclusion from that reached by the district court. However, there are too many facts in the record which are unexplained, e.g., Fast Food's apparent possession of the premises, for us to make any such ruling. The entire question should be reconsidered by the district court on remand.