16404. ATLANTA & LOWRY NATIONAL BANK *v.*
MAUGHON *et al.*

1. Where, after the maturity of a promissory note secured by the indorsement of a surety, the payee, without the consent of the surety, accepts from the maker a new note for the same amount, maturing at a deferred date, and charges and accepts from the maker interest upon the new note from the date of its execution to the date of its maturity, and where the new note represents no additional indebtedness to the payee, both notes constitute obligations for the same indebtedness, and the acceptance of the latter note constitutes a contract in writing between the payee and the maker of the original note, extending the time of payment of the original note without the surety's consent, and operates to release the surety, any parol agreements or understandings to the contrary notwithstanding.

2. An admission of liability which amounts only to a legal conclusion has no probative value as against the legal effect of a contract which relieves from liability the party making the admission.

DECIDED FEBRUARY 13, 1926.

Complaint; from Fulton superior court—Judge Ellis. March 6, 1925.

A suit on a promissory note for $2500 and interest from maturity at the rate of 8 per cent. per annum, dated December 29, 1919, and due four months after date, was instituted by the Atlanta & Lowry National Bank, as payee, against H. E. Maughon, as maker, and R. J. Woodall, as administrator of the estate of the surety, C. M. Maughon. The maker pleaded a discharge in bankruptcy, and the administrator pleaded, as a release of the surety, an alleged contract by which the payee had, without the surety's consent, agreed with the maker to extend the time of payment of the

Evidence, 22 C. J. p. 298, n. 12, 13.
Principal and Surety, 32 Cyc. p. 151, n. 62; p. 210, n. 21.

note. The maker proved a discharge in bankruptcy as against the note sued on. As to the plea of release of the surety filed by the administrator, it appears from undisputed evidence that on November 27, 1920, after the death of the surety, the maker executed to the bank another note in the same amount as the note sued on, which new note by its terms matured January 15 after date and called for interest after maturity; that the bank accepted this note and at the same time collected from the maker the interest on $2500 from the date of the new note until the date of its maturity, all of which was done without the consent of the surety; that both notes, each for the principal sum of $2500 and aggregating $5000, were retained by the bank, but nothing was advanced upon the new note, and after its execution and acceptance by the bank an indebtedness of only $2500 was claimed by the bank against the maker. The officer of the bank who handled the transaction testified as follows: "The transaction was between H. E. Maughon and myself at the time the second note was given, November 27, 1920. There was no agreement on my part or on the part of the bank to accept it in payment of the original note, and there was no agreement to extend the original note, and there was no agreement between Mr. Maughon and myself to change the status of the original note when this note was given. . . I did not consider that subsequent to November 27, 1920, H. E. Maughon owed me $5000. I only considered he owed me $2500. I did not consider the note of November 27, 1920, a renewal note of the note of December 29, 1919. I would not consider a renewal note unless it bore the same signatures. . . It was not our intention to extend the old note. The new note was merely a convenience on our part. We accepted the new note, making the original amount expressed in the old note payable on January 15, 1921. We accepted it with the understanding that the indorser would not be released; and that understanding was accepted through H. E. Maughon. It was not with the consent of the original indorser, C. M. Maughon. He was dead at that time. There was no consent from him. We accepted payment of interest in advance on this new note until the 15th of January." A verdict for both defendants was directed.

*King, Spalding, MacDougald & Sibley, Neufville & Neufville,* for plaintiff.

*Jones, Evins, Moore & Powers, L. S. Camp,* for defendants.

STEPHENS, J. (After stating the foregoing facts.)

1. Does the evidence as a matter of law establish the surety's release, and therefore was the verdict for the administrator of the estate of the surety properly directed? The bank's acceptance on November 27, 1920, of the new note, which was in the same amount, namely, $2500, as the original note sued on, and which contained "the original amount expressed in the old note payable on January 15, 1921," can be regarded only as a cumulative promise to pay at a deferred date the then-existing indebtedness of $2500 represented by the note sued on, which was at the time past due. The "interest in advance on this new note until the 15th of January," which was collected and accepted by the bank from the maker contemporaneously with the execution of the new note of November 27, 1920, must necessarily have been interest upon some indebtedness due the bank by the maker. Since the only indebtedness due the bank was $2500, which was not created by the new note, the interest accepted by the bank must necessarily have been paid and accepted upon the pre-existing indebtedness represented by the original note. To hold otherwise would impute to the bank the acceptance of interest in advance upon nothing, and the extension of time for the payment of nothing. The new note, which was executed by the maker of the original note, and which provided for the payment of $2500 at a deferred date, for which interest in advance was charged and collected, necessarily constituted a contract between the bank and the maker of the original note, whereby the time of payment of the existing indebtedness of $2500 represented by the original note was extended to January 15th following. Since such extension was made without the consent of the surety, the surety was thereby released. Civil Code (1910), § 3544.

The contract of extension as evidenced in the new note being in writing, no parol agreements or understandings to the contrary, if there were any, made by the parties contemporaneously with its execution constitute any part of the contract. There is evidence that there was no agreement to extend the time of payment, and that it was not the intention of the parties to extend the time of payment, but it does not appear that there was any agreement by which the time of payment was not extended. Where interest on a past-

due indebtedness is accepted in advance, it constitutes an extension of the time of payment, unless there is an agreement to the contrary. This agreement must be an affirmative one to the effect that the time of payment is not thereby extended. A negative agreement to the effect that it was not agreed that the time of payment was extended will not suffice. *Randolph* v. *Fleming,* 59 *Ga.* 777 (2); *Scott* v. *Saffold,* 37 *Ga.* 384. There is evidence, however, to the effect that the new note was "accepted with the understanding that the indorser would not be released." Such an agreement manifestly can not defeat the legal effect of a contract extending the time of payment without the surety's consent. Such a contract entered into with the maker operates as a matter of law to release the surety, despite any agreement to the contrary with the maker.

It is immaterial that the twelve-month period within which the estate was exempt from suit had not expired and that no suit at the time could have been filed against the estate. Irrespective of this bar to an immediate collection from the surety's estate, the surety, or those succeeding to his rights, had the right to a preservation of the contract with the principal as originally made. But for the agreement with the maker extending the time of payment without the surety's consent, the administrator of the surety could have paid the note immediately, or at any time during the period of extension, and brought suit thereon against the maker. During this period of extension the surety might have been able to collect the amount of the debt out of the principal by garnishment or otherwise, whereas such opportunity might have passed before the expiration of the period of extension.

2. The maker of the two notes, who testified on the trial, was at the time of the execution of the second note and some time thereafter the administrator of the estate of the surety. A statement by him, made after the execution of the second note, contained in his individual petition for bankruptcy, to the effect that the estate of the surety, who was his intestate, would have to pay the note sued on, amounted to no more than an expression of an opinion by him as to a legal conclusion, or a prophecy of fact. 22 C. J. 298, § 325; *Solomon* v. *Solomon,* 2 *Ga.* 18 (5). It has no probative force as against the legal effect of the contract actually made, releasing the surety. The maker's testimony, to the effect that,

when he made his return as administrator upon his relinquishment of the administration of the estate to his successor, he considered the note sued on as an indebtedness of the estate, is subject to the same criticism.

Under the undisputed evidence a verdict was properly directed for the defendant administrator representing the estate of the surety. The maker's discharge in bankruptcy was established without issue, and the verdict as to him was properly directed.

*Judgment affirmed. Jenkins, P. J., and Bell, J., concur.*