## MAGNOLIA PETROLEUM CO. v. GARNER et al.

No. 27490.　Jan. 11, 1938.

W. H. Francis, Blakeney, Wallace, Brown & Blakeney, and A. E. White, for plaintiff in error.

Varner & Varner, for defendants in error.

PHELPS, J. The plaintiffs owned a filling station. By written instrument they leased it to the defendant corporation for a term of five years. The defendant took possession and operated the station for approximately two and a half years, at which time it served written notice upon the plaintiff lessors that by reason of their failure to observe the covenants contained in the lease agreement the lessee elected to exercise its right to terminate the lease. In about a month, then, the defendant vacated the premises. This is an action by the lessors against the lessee, in which the lessors recovered a verdict and judgment for the rental covering the remainder of the five-year lease period, less a small amount of profit realized by the lessors in operating the station after the lessee had vacated. The lessee appeals.

One of the defenses asserted by the lessee was that of constructive eviction. We shall limit the statement of facts to that issue. On behalf of the defendant it was shown that lessors also owned the land adjacent to the filling station, which was vacant when the lease was executed; that thereafter lessors built a garage there and began selling gasoline in competition with the lessee, and at about the same time began a series of acts in relation to the leased premises which, in several different ways. substantially interfered with lessee's profitable enjoyment thereof, such as cutting off the water in the automatic water system which was a part of the leased station, forbidding the lessee's operator to wash cars for the public, or even his own car, forbidding him to sell small accessories, objecting to the erection of a sign, altering placement of a water pump by placing it within the leased station, forbidding the temporary storage of small packages at the station, closing an opening in one of the walls, altering the ventilation, and numerous allied acts of interference which, if believed by the jury, clearly would have sustained a verdict in defendant's favor. On the contrary, the evidence for the plaintiff lessors denied or tended to explain each of said alleged acts of interference. Illustrating, the plaintiffs admitted that they turned off the water, but contended that they did it in order to save the property, in that the lessee occasionally had dangerously increased the pressure in the water pipes and water tank, by means of the pressure pump, and because the lessee failed to turn off the water in freezing weather. One cannot read this record, as we have, without being impressed with the fact that the lessors were guilty of interference with lessee's possession and enjoyment of the lease, to a marked and unusual degree. This is true, regardless of whether the lessors considered themselves justified in so interfering.

In appealing, the defendant lessee asserts that the emphasized portion of the following instruction to the jury placed too great a burden on the defendant, in that no such element is required in the proving of a constructive eviction:

"Gentlemen of the jury, you are instructed that the defendant has interposed in this action as one of its defenses that the plaintiffs, after demising the premises, interfered with the defendant's possession and use of same and prevented the use for which they were leased.

"In this connection you are instructed that the burden is upon the defendant to prove its defense by a preponderance of the evidence.

"You are further instructed that the law enjoins upon the plaintiffs the duty of maintaining the leased premises in a condition suitable for the purposes for which they were leased and to avoid all acts rendering the occupation and use of same disagreeable and unprofitable. If you find from a preponderance of the evidence, as those terms are hereinafter defined, that the construction of the ladies' rest room and the continuous use of the water were necessary and desirable for the proper operation of the filling station in the customary manner and that plaintiffs **unreasonably, arbitrarily, or capriciously** and with the intent to interfere with defendant's quiet, peaceable and profitable enjoyment and use of said premises, in disregard of the rights of the defendant. lessee, interfered in the enjoyment of the premises in this regard, then the defendant would be justified in surrendering the premises and released from the payment of rents after giving notice of its intention to determine the lease, and your verdict should be for the defendant."

In the instruction following the one just quoted, the trial judge told the jury that unless the defendant had proved the defense as set forth in the foregoing instruction it would be the jury's duty to find for the plaintiffs. Therefore, according to the instructions, the only manner by which the defendant could establish that a constructive eviction had taken place was to prove to the jury not only that the lessors had interfered with the lessee's quiet, peaceful. and profitable enjoyment of the premises, but (1) that the acts or omissions of interference were intended by the lessors to have that effect; and (2) that the lessors, in so interfering. acted unreasonably, arbitrarily, or capriciously.

Passing over, and not discussing the requirement that the lessor, usually called the landlord, must **intend** that his acts interfere with the tenant's quiet enjoyment (over which question there has been some difference of opinion in the cases), we think that the additional requirement of proof that the landlord acted unreasonably, arbitrarily, or capriciously was the placing of a burden upon the defendant beyond the essentials of the law of eviction. No decision or authority has been cited in the briefs, nor have we been able to find any, listing the element of capriciousness or unreasonableness in the landlord as essential to the establishment of constructive eviction. In a few of the reported cases the landlord's act of interference is spoken of as a "wrongful" act, but in most of them it is not. Even where the word is used in this sense, it means wrongful merely because violative of the contract. As comprehensive and correct a definition as this court has pronounced was in the case of Baptist General Convention, etc., v. Wright, 136 Okla. 150, 276 P. 777, where it was said in the syllabus:

"Any disturbance of the tenant's possession by the landlord or by some one under his authority whereby the premises are rendered unfit for occupancy for the purpose for which they were demised, or the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction, if the tenant abandons the premises within a reasonable time."

In view of the facts of this particular case, it is with considerable reluctance that we hold this instruction erroneous. Consider, for instance, the matter of the water: We realize that if the truth really is that the landlords honestly feared that their property would be injured unless they turned off the water, and if that alone was their motive, they should not be made to suffer. But there are several answers to that argument: First, they need not suffer, for they have their legal redress for any injury to their property, without taking the matter physically into their own hands; secondly, the promulgation of any such rule would, in the large run of cases, endow the landlord with a supervisory and regulatory control over the leased premises entirely inconsistent with the proper legal relationship of landlord and tenant; thirdly, it would tend to produce a situation whereunder the rights of the parties would be measured more by the reasonableness of their personal reactions to circumstances than by the terms of the contract, thus in effect transforming a contractual relationship into a personal relationship, or tending to do so. Instances are easily conceivable wherein the tenant is not at fault and yet where the landlord's admittedly evictive act is from his own viewpoint entirely reasonable, not arbitrary, not capricious.

There is nothing herein which will prevent a landlord from acting to protect his property in emergencies. This is not that kind of case. The acts of interference herein complained of extended over a considerable period of time and were of a continuing nature and in different forms. Approval of the instruction would add a new and questionable requirement to proof of constructive eviction in virtually all cases.

One other proposition is advanced by the plaintiff in error, but the defendants in error object to consideration thereof on the ground that the issue was not properly raised by the pleadings in the trial court. Prior to new trial the defendant will be permitted to amend its answer in this respect.

Reversed and remanded.

BAYLESS, V. C. J., and RILEY, GIBSON, and HURST, JJ., concur.