HENRY S. CATO

*v.*

CYRUS E. SILLING, SR.

(No. 10435)

Submitted September 24, 1952. Decided December 16, 1952.

*Litton, Fisher & Schaffer, J. B. Fisher* and *Donald L. Schaffer,* for plaintiff in error.

*Salisbury, Hackney & Lopinsky* and *Jackson D. Altizer,* for defendant in error.

HAYMOND, JUDGE:

In this action of trespass on the case, instituted in the Court of Common Pleas of Kanawha County on March 27, 1950, the plaintiff, Henry S. Cato, a practicing attorney of Charleston, and a former judge of the Circuit Court of Kanawha County, seeks to recover from the defendant, Cyrus E. Silling, Sr., damages for the alleged wrongful eviction of the plaintiff from a room occupied by him as subtenant from month to month in a large dwelling located at the corner of Kanawha Boulevard and Morris Street, designated as 1216 Kanawha Boulevard, East, in Charleston, Kanawha County, West Virginia, which dwelling had been previously leased by the defendant to Clara Williams Allen as a tenant from month to month. The theory on which plaintiff bases his claim for damages is that the defendant, during the period March 1 to March 13, 1950, evicted the plaintiff from the premises occupied by him in violation of an Act of Congress known as the Housing and Rent Act of 1947, its amendments then in effect, certain rules and regulations promulgated under that statute, and the law of this State relating to landlord and tenant.

The defendant interposed no demurrer to the declaration, which consists of a single count, but filed his plea of not guilty. Upon a trial of the issues raised by the declaration and the plea, the jury returned a verdict in

favor of the plaintiff for $3300.00. In response to requested interrogatories the jury awarded $2000.00 as compensatory damages and $1300.00 as punitive damages. At the conclusion of the evidence offered by the plaintiff and at the conclusion of the evidence introduced by both parties the court of common pleas overruled separate motions of the defendant to strike the evidence and direct a verdict for the defendant. That court also overruled a motion of the defendant to set aside the verdict and to grant him a new trial and by final order entered January 10, 1951, entered judgment in favor of the plaintiff for the amount of the verdict with interest and costs. By order entered May 19, 1951, the Circuit Court of Kanawha County denied the petition of the defendant for a writ of error, and to that judgment this Court granted this writ of error upon the petition of the defendant.

The declaration alleges, in substance, that the defendant, as the owner of the dwelling located at the corner of Kanawha Boulevard and Morris Street, known as 1216 Kanawha Boulevard in the City of Charleston, prior to the commission of the acts complained of by the plaintiff, had leased the premises to Clara Williams Allen as a tenant from month to month; that the tenant of the defendant had sublet a room of the dwelling since April 24, 1944, to the plaintiff who had continuously occupied it as a tenant from month to month; that the United States Government had in force and effect certain statutory regulations governing the eviction of tenants and the amount of rent to be charged for dwelling units; that the dwelling occupied by the plaintiff was subject to such regulations; that such regulations prevented the eviction of tenants or subtenants except by order of the Area Rent Director; that the defendant, desiring to demolish the building occupied by the plaintiff, on January 9, 1950, by his attorney, filed a petition seeking permission to shorten the period within which the defendant could sue to evict his tenant, Clara Williams Allen, and her subtenants, and sought permission to demolish the building immediately; that by reason of the regulations the occupants of

the building could not be sued for possession of or evicted from the premises until after ninety days from the date of due service of proper notice to them to vacate and surrender possession of the premises; that a copy of the petition was duly served upon the plaintiff; that the plaintiff filed an answer to the petition and resisted the granting of the prayer of the petition; that on January 19, 1950, the Area Rent Director ordered the defendant not to commence an action to remove or evict the plaintiff before April 11, 1950; that Clara Williams Allen, the tenant of the defendant, by the same attorney, on January 11, 1950, filed a petition with the Area Rent Director for permission to remove her furniture and fixtures from the premises occupied by the plaintiff and to disconnect all utilities on March 1, 1950; that the plaintiff owned all the furniture in the room occupied by him, except a bed and a mattress which were owned by Clara Williams Allen, and kept in his room all his clothes and other personal effects; that he filed an answer to the petition of Clara Williams Allen and resisted the granting of the prayer of her petition but that the Area Rent Director, notwithstanding his prior order of January 19, 1950, by an order of January 31, 1950, permitted her to remove her furniture and to discontinue the services of utilities on or after March 1, 1950, and reduced the rent to be paid by the plaintiff from thirty dollars per month to twenty dollars and fifty cents per month in the event she removed her furniture and discontinued the utilities; that she did not remove her furniture or discontinue the utilities; that on the night of February 28, 1950, he was stricken with a severe cold, and because of his age of seventy two years and the severity of his illness, he remained in bed during that night and the forenoon and the early afternoon of March 1, 1950, in an effort to cure his cold, the weather then being very cold and inclement; that notwithstanding the severe illness of the plaintiff and the extreme cold weather, the defendant, maliciously, wilfully and wantonly intending to injure the plaintiff, in the afternoon of March 1, 1950, disconnected, or caused to be disconnected, the electricity in the dwelling occu-

pied by the plaintiff, and in the forenoon of March 2, 1950, that being the coldest day of the winter, the temperature being seven degrees above zero, while the plaintiff was in bed in his endeavor to cure his cold, the defendant, maliciously, wilfully and wantonly contriving to injure the plaintiff, caused the water and the gas supplied to the room occupied by the plaintiff to be disconnected, in violation of the legal and constitutional rights of the plaintiff and to his great injury and damage; that the defendant, knowingly, wilfully, wrongfully, wantonly and maliciously, constructively evicted the plaintiff, on March 2, 1950, and between March 2, 1950, and March 13, 1950, on a date unknown to the plaintiff, actually evicted him, from the premises occupied by him in direct violation of the order of the Area Rent Director of January 19, 1950; that as the proximate result of the wilful and wanton misconduct of the defendant the health of the plaintiff was greatly impaired, the plaintiff was humiliated and caused to suffer great mental anguish, distress and inconvenience, and many valuable items of clothing and personal property of the plaintiff were stolen and removed from the premises lawfully possessed and occupied by the plaintiff to his financial loss and damage; and that the defendant, in wilful disregard and violation of the federal statutes and regulations and of the statutes and the common law of this State, wilfully, wantonly, unlawfully, maliciously and negligently deprived the plaintiff of his right to occupy, and evicted him from, the premises at 1216 Kanawha Boulevard, to the damage of the plaintiff in the amount of twenty five thousand dollars.

There is little, if any, conflict in the material facts disclosed by the evidence and the only facts as to which the evidence is conflicting are relatively unimportant.

The plaintiff, as a subtenant, had occupied a room in the dwelling at 1216 Kanawha Boulevard since the year 1944 at a rental of $30.00 per month, payable on the first day of each month. At first he rented the room from Wallace B. Allen but afterwards he occupied it from month to month as a subtenant of Allen's wife, Clara

Williams Allen. Mrs. Allen had a lease on the entire property for a fixed term when the defendant and an associate purchased it from a former owner late in the year 1944, and after the lease expired Mrs. Allen continued to occupy the property as a tenant from month to month and rented rooms to several other subtenants. In 1948 or 1949 the defendant purchased the interest of his associate and became the sole owner of the property. The defendant acquired his interest in the property for the purpose of constructing a large apartment building on the lot occupied by the dwelling, the construction of which necessarily required the prior demolition of the dwelling.

When some of the events occurred which led to this litigation, the plaintiff was the subtenant of Mrs. Allen, she was the tenant of the defendant, and he was the sole owner of the property. No lease or other contract relating to the property existed between the plaintiff and the defendant. The plaintiff had no dealings with the defendant in connection with his payments of rent which he made to Mrs. Allen and she furnished the utilities which were obtained in her name and were included in the rent paid by the plaintiff.

For various reasons the defendant had been unable to begin the execution of his plan to construct an apartment on the site of the dwelling until the latter part of 1949 or the early part of 1950. About two weeks prior to January 9, 1950, the defendant conferred with the Federal Area Rent Director in Charleston and requested him to waive or shorten the three months period which the defendant was required, by federal regulations, to wait before obtaining possession of the property occupied by Mrs. Allen as tenant and by the plaintiff as her subtenant. On January 9, 1950, the defendant, who then owned the property, by his attorney, filed a petition with the Area Rent Director requesting permission to demolish the dwelling immediately and waiver of the three months period before he could obtain possession for that purpose. The plaintiff, having been notified of the filing of the

petition, resisted the petition for several stated reasons. The Area Rent Director, by order of January 19, 1950, refused to permit the commencement of any action by the defendant to remove or evict the plaintiff, who was designated as tenant, before April 11, 1950, and the plaintiff was so notified. On January 11, 1950, the lessee of the defendant, Mrs. Allen, by the same attorney, filed her petition with the Area Rent Director for permission to remove from the premises all her furniture and fixtures used by her subtenants and to disconnect, as of March 1, 1950, all utilities furnished them. The plaintiff was notified of the filing of the petition and opposed the granting of the permission requested by Mrs. Allen. By order of January 31, 1950, of which the plaintiff promptly received notice, the director permitted Mrs. Allen to remove her furniture and discontinue the utilities on or after March 1, 1950, and, in the event of such removal and such discontinuance, reduced the maximum rent to be paid by the plaintiff from thirty dollars per month to twenty dollars and fifty cents per month. No appeal from this order was taken or sought by the plaintiff who considered it inconsistent with the order of January 19, 1950, and for that reason of no effect.

On January 17, 1950, Mrs. Allen was served with a written notice from the defendant of the termination of her tenancy from month to month which required her to deliver possession of the premises to the defendant on February 19, 1950, the end of the next succeeding month of her tenancy, for the stated reason that the defendant desired to demolish the improvements on the land and to construct a new housing development. Mrs. Allen complied with this notice and removed all her furniture, except that in the room occupied by the plaintiff, and she and all her subtenants, other than the plaintiff, vacated the premises before the end of February, 1950. She moved into the second story of a small garage building on the rear of the lot and occupied it as a tenant from month to month without being required to pay rent to its then owner, One Morris, Inc., a corporation,

for several months, after which she was required to pay a rental of twenty five dollars per month for a few additional months. This building was not demolished and was used in connection with the erection of the new building which was in process of construction at the time of the trial of this action in December, 1950.

On January 20, 1950, the plaintiff was served with a written notice from Mrs. Allen of her intention to terminate his tenancy from month to month which required him to deliver possession to her of the premises occupied by him on the 28th day of February, the end of the next succeeding month of his tenancy, for the stated reason that her lessor intended to demolish the improvements on the land and to construct a new housing unit. The plaintiff, relying upon the order of the Area Rent Director of January 19, 1950, disregarded the notice and continued to occupy the premises after February 28, 1950.

In December, 1949, the defendant and several other persons formed a corporation known as One Morris, Inc., in which the defendant is a shareholder and owns or is entitled to approximately one fourth of its stock; and early in February, 1950, the exact date not being shown, the defendant conveyed the land on which the dwelling and the garage were located to that corporation which since then has been its owner. Though a shareholder, the defendant has not been and is not an officer, a director, or an agent of the corporation, but he has been and is employed as its architect, and he prepared the plans and the specifications for the demolition of the dwelling and the construction of a new apartment building. After the property was conveyed by the defendant to One Morris, Inc., that company entered into a contract with C. H. Jimison and Sons, whose president is one of the three directors of One Morris, Inc., for the demolition of the dwelling and the construction of the new building. The Jimison Company contracted with or employed a man named Fike to demolish the dwelling and he and his employees actually performed that work. It can not be definitely determined from the evidence whether the relation

between One Morris, Inc., and C. H. Jimison and Sons and Fike and his employees was that of employer and independent contractor or that of master and servant. Under the evidence, however, it is not necessary to determine that question in passing upon the question whether the defendant wrongfully evicted the plaintiff and damaged his property.

In the early afternoon of March 1, 1950, while the plaintiff was in bed and ill with a severe cold, a mechanic, accompanied by Mrs. Allen, entered the room occupied by the plaintiff and informed him that he had disconnected the electricity from the room. As soon as the plaintiff had dressed he left the house, walked to the Elks Club, and there by telephone talked to the attorney for the defendant and asked him to request the defendant to restore the electricity to the room. The attorney replied that he would ask the defendant but that he was sure the defendant would not do so. The plaintiff then went to the office of the Area Rent Director and complained to him about the inconsistency of his two orders of January 19, 1950, and January 31, 1950, and the director talked from his office by telephone with the attorney for the defendant. The plaintiff also went to the Press Club and there cashed a check for thirty dollars and later called at the garage and tendered that amount of money to Mrs. Allen in payment of his rent for the month of March but she refused to accept the money. The plaintiff obtained two candles from her which he used to light his room and about midnight returned to his room and spent the night there.

About ten thirty o'clock the following morning while the plaintiff was still in bed, a plumber came to his room accompanied by Mrs. Allen and told the plaintiff that he had diconnected the water and the gas from his room. The plaintiff went to the office of the Area Rent Director in an unsuccessful effort to see him and then to the office of a Charleston lawyer where he and the lawyer worked for some time in the preparation of a bill for an injunction against the defendant which the plaintiff presented on the

following day in a Federal District Court but on which that court refused to issue an injunction. The plaintiff, considering his room untenantable without utilities, the weather on March 1 and 2, 1950, having been extremely cold, obtained a room at a hotel where he spent the night of March 2, 1950, and remained for several days. He did not return to the dwelling until Sunday, March 12, 1950, when he found the outer door locked and the house in a state of partial demolition, and he was unable to enter his room. He visited the dwelling again on March 13, 1950, about five o'clock in the afternoon, accompanied by a young man from the office of his attorney, and at that time several men were engaged in the work of demolishing the house. The doors, the windows, and the radiators had been removed and articles of furniture and wearing apparel and other personal effects which the plaintiff had left in his room on March 2, 1950, were either missing or had been damaged and placed in the garage at the rear of the dwelling. Among the missing articles which were never recovered by the plaintiff were five suits of clothes, an overcoat, a pair of trousers, a radio and other personal effects owned by him.

When the plaintiff left his room on March 2, 1950, he knew that the defendant planned to demolish the dwelling. At that time the plaintiff intended to return within forty eight hours or as soon as he could have the utility services restored. Though he was suffering from a severe cold on March 1 and 2 when he visited the places at which he called he walked from each place to the other. He was treated for his cold twice by one doctor and on three separate days by another doctor who charged fifteen dollars for his services and, though the plaintiff stated that he continued to be ill for about thirty days and one of the doctors testified that during that period the plaintiff experienced a loss of ten pounds from his normal weight, he appears to have entirely recovered from his illness.

The plaintiff testified that he paid $17.23 in excess of the amount of the rent for his room in the dwelling as the result of his eviction; that the value to him of the five

missing suits was $112.20 each for three of them and $60.00 each for the other two; that the cost to him of the radio was $28.97; that the total cost or the value to him of the other missing or damaged articles was $167.55; that the estimated cost of repairing the damage to his wardrobe was from $15.00 to $25.00; and that he paid $75.00 to investigators for their services in unsuccessfully undertaking to find the missing or stolen articles. The tailor who made the five suits for the plaintiff, however, testifying as a witness in his behalf, stated on cross-examination that the suits had no commercial value. The plaintiff also testified that he was actually evicted from his premises on March 2, 1950, and that when he found on March 14, 1950, that his personal property had been removed from his room his eviction from the premises became complete. He further testified that he was embarrassed by his eviction from his room and that he was "upset" from the time he saw his property in the garage in a damaged condition and discovered that some articles owned by him had been stolen.

There is no direct or positive evidence that the defendant evicted the plaintiff from the premises or participated in any acts or conduct which caused the plaintiff to leave the premises on March 2, 1950. The defendant was not personally present when the electricity was disconnected on March 1, 1950, or when the water and the gas were discontinued on March 2, 1950, or at any time when the plaintiff saw the workmen engaged in demolishing the dwelling. The evidence also fails to show that the defendant controlled or influenced the action of the owner of the property, One Morris, Inc., in obtaining possession of the property or in causing the demolition of the dwelling. The only acts or conduct of the defendant which in any way connect him with the eviction of the plaintiff from the dwelling were his well known desire while he was the owner of the property to obtain possession and to hasten the demolition of the dwelling and the construction of a new building; his action in filing his petition with the Area Rent Director which resulted in the order of

January 19, 1950, permitting him to institute an action to evict or remove the plaintiff from the premises on or after April 11, 1952; his activity as the architect who prepared the plans and specifications for the demolition of the dwelling and the construction of a new building and his employment in that capacity by One Morris, Inc., after its incorporation in December, 1949; and his reference to the property as "my property" in a letter which he wrote to the plaintiff on March 15, 1950, in which he stated that after Mrs. Allen and her subtenants had removed from the property he visited the house with the contractor and saw some shirts, magazines and books in a chest in one of the second floor rooms which the men working for the contractor placed in the garage and in which he offered to deliver these articles to the plaintiff if they were owned by him. Though the plaintiff testified that he knew who caused the utilities to be disconnected he did not state who that person was. Mrs. Allen, who presumably could have testified to any participation of the defendant in the discontinuance of those services, was not called as a witness by either party and did not testify in the case. Though a witness called by the plaintiff stated that the defendant "negotiated" the contract between One Morris, Inc., and C. H. Jimison and Sons for the demolition of the dwelling and the construction of a new building, he admitted on cross examination that he was not present when any negotiations between them occurred.

By his numerous assignments of error, as now summarized, the defendant seeks reversal of the judgment of the circuit court and the judgment of the court of common pleas on substantially these grounds: (1) The declaration does not state and the evidence does not prove a cause of action under the Housing and Rent Act of 1947 and its amendments in effect in March, 1950, or under the law of this State relating to landlord and tenant; (2) the plaintiff was guilty of contributory negligence barring recovery; (3) the defendant was not the owner, or an officer, director, or agent of the owner, of the property at the time of the alleged injury to the plaintiff, and the

evidence introduced by the plaintiff is insufficient to show that the defendant actually damaged the plaintiff; (4) the evidence relating to the question of punitive damages was improperly admitted, and the single instruction offered by the plaintiff should have been refused; (5) instructions Nos. 4, 6, 8, 10, 11, and 18, offered by the defendant and refused by the court, should have been given, and (6) the admission, over the objection of the defendant, of improper evidence offered by the plaintiff.

The defendant insists that the declaration fails to state a cause of action under the federal statute known as the Housing and Rent Act of 1947, and its amendments in effect in March, 1950, and the rules and the regulations promulgated under that statute, or under the law of this State relating to landlord and tenant. The pleadings in a suit or action at law must be sufficient to support the judgment, and a judgment rendered upon a pleading which fails to state a cause of action is erroneous. 49 C. J. S., Judgments, Section 40b. "Decrees in equity and judgments at law must have a basis in the pleadings and the evidence." 41 Am. Jur., Pleading, Section 381. In *Waldron* v. *Harvey,* 54 W. Va. 608, 46 S. E. 603, 102 Am. St. Rep. 959, this Court said: "A decree, or any matter of a decree, which has no matter in the pleading to rest upon is void, because pleadings are the very foundation of judgments and decrees." In *Vance Shoe Company* v. *Haught,* 41 W. Va. 275, 23 S. E. 553, this Court held in Point 1 of the syllabus: "There can be no decree without allegations in the pleading to support it." See also *Kesterson* v. *Brown,* 94 W. Va. 447, 119 S. E. 677; *Simmons* v. *Yoho,* 92 W. Va. 703, 115 S. E. 851; *Simmons* v. *Simmons,* 85 W. Va. 25, 100 S. E. 743; *Black* v. *Crouch,* 85 W. Va. 22, 100 S. E. 749; *Conrad* v. *Crouch,* 68 W. Va. 378, 69 S. E. 888; 11 Michie's Jurisprudence, Judgments and Decrees, Section 23. Ordinarily a pleading which does not state facts sufficient to constitute a cause of action may be challenged at any time and at any stage of the proceedings. 71 C. J. S., Pleading, Section 551. This rule applies to a declaration which completely fails to

state a substantial cause of action and which can not be made good by amendment. *In re Mueller's Estate,* 280 Mich. 203, 273 N. W. 448; *Bauman v. Bean,* 57 Mich. 1, 23 N. W. 451. See also 4 C. J. S., Appeal and Error, Section 274 (2). There is a distinction between the defective statement of a good cause of action and the statement of a defective cause of action. 41 Am. Jur., Pleading, Section 407; 49 C. J., Pleading, Section 490 (2); 71 C. J. S., Pleading, Section 232 (b). A defect in a declaration which amounts to a failure to state a cause of action is not waived by the absence of a demurrer, or by pleading over after a demurrer is filed and overruled, unless such defect is aided or cured by such pleading or subsequent proceedings. 41 Am. Jur., Pleading, Section 398. The failure to state a cause of action is not cured by verdict, 41 Am. Jur., Pleading, Section 407; or by Code 56-4-37, dealing with defects which may be disregarded on demurrer, *Kidd v. Beckley,* 64 W. Va. 80, 60 S. E. 1089; and such defect may be raised by motion for a new trial. 41 Am. Jur., Pleading, 389. In 6 Michie's Jurisprudence, Demurrers, Section 29, the text, quoting from Burk's Pleading and Practice, 3rd Ed., Section 198, uses this language: "All defects apparent on the face of the pleadings are waived by a failure to demur except such substantial defects as are not cured by pleading over, by verdict, or by the statute of jeofails, or which show a complete absence of a cause of action, or a want of jurisdiction over the subject matter." In view of these well established principles, it is necessary in considering the question of the sufficiency of the verdict and the validity of the judgment in this case to determine whether the declaration states a cause of action under the federal statute, as amended, in effect in March, 1950, and the rules and the regulations promulgated under that statute, or under the law of this State relating to landlord and tenant.

The Housing and Rent Act of 1947, Act of June 30, 1947, Chapter 163, 61 Stat. 193, as amended by the Housing and Rent Act of 1948, Act of March 30, 1948, Chapter 161, 62 Stat. 93 and by the Housing and Rent Act of 1949, Act of

March 30, 1949, Chapter 42, 63 Stat. 18, 50 U. S. C. A., Appendix, Sections 1881 to 1910, and the rules and the regulations promulgated under that statute, as so amended, in effect at the time of the commission of the alleged acts of the defendant of which the plaintiff complains in his declaration, imposed certain criminal penalties for the violation of the provisions of Section 4 of the Housing and Rent Act of 1947, as so amended, which involved acts of a different character from those charged to the defendant, but neither the statute, as so amended, nor the rules and the regulations promulgated by the Housing Expediter, under which the local Area Rent Director issued his order of January 19, 1950, withholding permission from the defendant to institute an action to evict or remove the plaintiff from the premises occupied by him until April 11, 1950, prescribed any criminal liability for violation of any provision of the statute, any rule or regulation, or any order governing the eviction of a tenant by a landlord.

The statute, as amended, and in effect in March, 1950, provided in Section 205 for the recovery, by tenants from any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed by the act, of reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of $50.00, or three times the amount by which the payment demanded, accepted, or received exceeds the maximum rent which could lawfully be demanded, whichever in either case may be the greater amount, and authorized suit to recover such amount in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of any such violation. This provision, however, has no application to the facts of this case as they present no question of any overcharge of rent to the plaintiff by the defendant.

The statute, as so amended, and in effect in March, 1950, provided in Section 209 (a) that no action or proceeding to recover possession of any controlled housing accommodation with respect to which maximum rent is in effect shall be maintainable by any landlord against any

tenant in any court even though the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless "(4) the landlord seeks in good faith to recover possession of such housing accommodations for the immediate purpose of substantially altering, remodeling, or demolishing them and replacing them with new construction, and the altering or remodeling is reasonably necessary to protect and conserve the housing accommodations and cannot practically be done with the tenant in occupancy, and the landlord has obtained such approval as may be required by Federal, State, or local law for the alterations, remodeling, or any construction planned; * * *".

Section 206 (a) of the statute, as amended by Section 205 of the Act of March 30, 1949, provided that it shall be unlawful for any person to do any act in violation of the act or of any regulation, order or requirement under the Act. Section 209 of the Housing and Rent Act of 1947, as amended, was further amended by Section 206 of the Act of March 30, 1949, to provide that whenever in the judgment of the Housing Expediter such action is necessary or proper in order to effectuate the purposes of the Act, he may, by regulation or order, regulate or prohibit speculative or manipulative practices or renting or leasing practices including practices relating to the recovery of the possession, in connection with any controlled housing accommodations which in his judgment are equivalent to or are likely to result in rent increases inconsistent with the purposes of the act.

The foregoing three sections of the Housing and Rent Act of 1947, as amended, and in effect in March, 1950, and the rules and the regulations dealing with or promulgated under those sections, authorized the Area Rent Director to issue a certificate relating to eviction for accommodations subject to rent control only if he finds that removal or eviction of the character proposed are not inconsistent with the purposes of the Housing and Rent Act of 1949, or the rent regulations, and would not be likely

to result in their circumvention or evasion, and provided that if any certificate relating to eviction is issued the landlord must wait for three months from the date of the filing of his petition before he is authorized to evict his tenant in accordance with local law unless the Area Rent Director finds that by reason of exceptional circumstances extreme hardship would result to the landlord, in which event all or any part of the waiting period of three months may be waived.

It is evident that the order of the Area Rent Director of January 19, 1950, which postponed the institution or the prosecution of any action to evict or remove the plaintiff until April 11, 1950, was issued pursuant to the rules and the regulations promulgated under the Housing and Rent Act of 1947, as then amended and in effect. As the defendant, however, did not undertake to institute any action to evict or remove the plaintiff from the premises, the order of the Area Rent Director which postponed the institution or the prosecution of any such action until April 11, 1950, did not affect the defendant except to the extent that, by implication, it prevented him, by the employment of other means or methods, from obtaining such possession prior to April 11, 1950.

Section 206 of the Housing and Rent Act of 1947, as amended, and in effect in March, 1950, provided in subsection (b) that "Whenever in the judgment of the Housing Expediter any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this Act, or any regulation or order issued thereunder, the United States may make application to any Federal, State, or Territorial court of competent jurisdiction for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond." The right to obtain an injunction under the provision just quoted, is conferred upon the United States,

not upon a tenant, and it is evident that the refusal of the Federal District Court at the instance of the plaintiff to enjoin the defendant from acquiring possession of the premises occupied by the plaintiff was based upon the absence of any right in him, as tenant, to invoke those provisions of that section of the federal statute.

Though the Housing and Rent Act of 1947, as amended, and as further amended by the Act of July 31, 1951, Chapter 275, Title II, Section 204, 65 Stat. 147, 50 U. S. C. A. Appendix, Section 1895, provides a civil remedy to a tenant for his unlawful eviction and authorizes the recovery of reasonable attorney's fees and costs plus certain damages within designated limits, prior to that amendment which, of course, was not in effect in March, 1950, the statute, as amended by the Acts of March 30, 1948, and March 30, 1949, did not provide any civil remedy, or create any cause of action, for the recovery of damages by a tenant who was wrongfully evicted by his landlord. *Crawford* v. *Pituch,* 368 Pa. 489, 84 A. 2d 204; *Behrendt* v. *Rassmussen,* 234 Minn. 97, 47 N. W. 2d 779; *Sher* v. *Perlman,* 324 Mass. 390, 86 N. E. 2d 902; *Gabriel* v. *Borowy,* 324 Mass. 231, 85 N. E. 2d 435; *Smith* v. *Bozzi,* D. C. Mun. App., 83 A. 2d 436. It follows that the allegations of the declaration which base the claim of the plaintiff to recover damages for the alleged wrongful eviction of the plaintiff upon a violation by the defendant of the order of the Area Rent Director of January 19, 1950, do not set forth a cause of action against the defendant.

Many of the averments of the declaration indicate that the plaintiff bases his claim to recover damages principally upon the alleged violation of the order of the Area Rent Director of January 19, 1950, by the defendant in evicting the plaintiff from the premises. The declaration, however, also asserts a claim of the plaintiff, under the law of this State relating to landlord and tenant, to recover damages for his alleged wrongful eviction by the defendant. The declaration alleges that at the time of his eviction the plaintiff possessed and occupied the premises as a tenant

from month to month of Clara Williams Allen, the lessee of the defendant, and that the defendant wrongfully, wilfully, wantonly and maliciously, on March 2, 1950, constructively evicted him from the premises, and between March 2, 1950, and March 13, 1950, actually so evicted him, and that in so doing damaged the plaintiff in the manner set forth in the declaration. By reason of these allegations, the declaration sufficiently sets forth a cause of action in favor of the plaintiff against the defendant under the law of this State relating to landlord and tenant, which, if supported by proof, would entitle the plaintiff to a recovery in this case. See *Toler* v. *Cassinelli,* 129 W. Va. 591, 41 S. E. 2d 672. A tenant in lawful possession of premises, who is wrongfully evicted by his landlord before the expiration of his term, may maintain an action for the resulting damages. 52 C. J. S., Landlord and Tenant, Section 460; 32 Am. Jur., Landlord and Tenant, Section 265. Where the wrongful eviction is malicious and wanton punitive damages may be recovered. 32 Am. Jur., Landlord and Tenant, Section 265.

The declaration sets out a cause of action for damages against the defendant. The proof, however, does not support or establish the material allegations of the declaration.

It is clear that Mrs. Allen was a tenant from month to month as the lessee of the defendant and that the plaintiff was a tenant from month to month of the lessee of the defendant and not a tenant but a subtenant of the defendant. A tenancy from month to month may be terminated by a month's notice to the tenant under Code 37-6-5, which in part provides that a periodic tenancy, in which the period is less than one year, may be terminated by notice for one full period before the end of any such period. See *Elkins National Bank* v. *Nefflen,* 118 W. Va. 29, 188 S. E. 750, 108 A. L. R. 1460. There is no privity of estate or contract between a lessor and a subtenant unless the subtenant attorns to the original lessor. 51 C. J. S., Landlord and Tenant, Section 48 (2) ; 32 Am. Jur., Landlord and Tenant, Sections 422 and 423; 11 Michie's Juris-

prudence, Landlord and Tenant, Section 57; *The Hawley Corporation* v. *West Virginia Broadcasting Corporation,* 120 W. Va. 184, 197 S. E. 628, 118 A. L. R. 120; *Moskin Stores* v. *Nichols,* 163 Va. 702, 177 S. E. 109. A subtenant has no greater right against a landlord than a tenant has against him, 11 Michie's Jurisprudence, Landlord and Tenant, Section 59; 32 Am. Jur., Landlord and Tenant, Section 422; *Bachinsky* v. *Federal Coal and Coke Company,* 78 W. Va. 721, 90 S. E. 227; and the termination of the primary lease terminates the sublease. 51 C. J. S., Landlord and Tenant, Section 48 (1); 32 Am. Jur., Landlord and Tenant, Section 424; 11 Michie's Jurisprudence, Landlord and Tenant, Section 50; *The Hawley Corporation* v. *West Virginia Broadcasting Corporation,* 120 W. Va. 184, 197 S. E. 628, 118 A. L. R. 120. That the defendant gave at least one month's notice to his tenant, Mrs. Allen, to deliver to him at midnight of February 19, 1950, possession of the premises leased to her and that she gave her tenant, the plaintiff, at least one month's notice to deliver to her at midnight of February 28, 1950, possession of the premises occupied by him, is not disputed and is clearly established. On February 19, 1950, the tenancy between the defendant and his tenant, Mrs. Allen, ended and shortly before or shortly after that date she removed her property and vacated the premises. All her tenants except the plaintiff also left the premises. On February 19, 1950, when the tenancy between the defendant and Mrs. Allen ended, and in any event on February 28, 1950, the tenancy between Mrs. Allen and the plaintiff also ended; but the plaintiff, evidently believing that the order of the Area Rent Director of January 19, 1950, permitted him to remain, refused to vacate the premises and intentionally continued to occupy them until March 2, 1950. The tenancy of the plaintiff, having been terminated on February 19, 1950, by the termination of the tenancy between the defendant and Mrs. Allen, or on February 28, 1950, by virtue of her notice to the plaintiff, the successor in title of the defendant, One Morris, Inc., and Mrs. Allen, as against the plaintiff, had the right to reenter and take

possession of the premises on March 1, 1950, without legal process if either of them did so peaceably and without unnecessary force, or violence, or breach of the peace. *Angel* v. *Black Bank Consolidated Coal Company,* 96 W. Va. 47, 122 S. E. 274, 35 A. L. R. 568; *Bachinsky* v. *Federal Coal and Coke Company,* 78 W. Va. 721, 90 S. E. 227; *Shorter* v. *Shelton,* 183 Va. 819, 33 S. E. 643. The only available remedy to prevent reentry of the owner, in the face of the order of the Area Rent Director of January 19, 1950, was the right of the United States under the Housing and Rent Act of 1947, as amended and then in effect, to proceed to prevent violation of that order, or to enforce compliance with it, by injunction, as provided in subsection (b) of Section 206 of that statute. That remedy, however, was not available to the plaintiff and was not invoked or pursued by the United States.

The contention of the plaintiff that he was constructively evicted from the premises by the defendant on March 2, 1950, when, during extremely cold weather, the mechanic accompanied by Mrs. Allen discontinued the utility service of gas and water from the room occupied by him, is wholly devoid of merit. According to the testimony of the plaintiff he went from his room on March 2, 1950, after the water and the gas were disconnected, for the purpose of having the service of those utilities restored by the defendant with the intention of returning when that had been done and within forty eight hours. When he departed he took only a few articles and left most of his possessions in his room, where he permitted them to remain, during his absence, until they were removed by the workmen who, between March 3 and March 13, 1950, were engaged in demolishing the house. It is clear that the plaintiff on March 2, 1950, had no intention of permanently leaving or abandoning the premises, and he did not abandon them at that time. No constructive eviction of a tenant by his landlord occurs unless the tenant abandons the premises, within a reasonable time, by reason of the acts which he contends constitute an eviction. Abandoment of the premises by the tenant

within a reasonable time, because of the acts of the landlord or someone acting for him, is essential to an eviction, and ordinarily the abandonment must be complete. 52 C. J. S., Landlord and Tenant, Section 457; 32 Am. Jur., Landlord and Tenant, Sections 246 and 250; *Westland Housing Corporation* v. *Scott,* 312 Mass. 375; 44 N. E. 2d 959; *Magnolia Petroleum Company* v. *Garner,* 181 Okl. 517, 75 P. 2d 202. There is no abandonment, and consequently no eviction, if, when the tenant departs from the premises, he leaves his goods and effects on the premises. 52 C. J. S., Landlord and Tenant, Section 458. It is also clear that the discontinuance of the service of the utilities, which the plaintiff contends constituted a wanton and wilful constructive eviction, was authorized by the order of the Area Rent Director of January 31, 1950, which expressly permitted Mrs. Allen to remove her furniture from the premises occupied by the plaintiff and to discontinue the utility services on or after March 1, 1950.

The allegation that the defendant wrongfully, wilfully, wantonly and maliciously, between March 2, 1950, and March 13, 1950, actually evicted the plaintiff is not established by the evidence. There is no sufficient proof that the defendant, who had conveyed the property to One Morris, Inc., prior to those dates and was not then its owner, either engaged or participated in or authorized or directed the work of demolishing the dwelling, or removed, or participated in, or authorized or directed, the removal of, or damaged, any of the property of the plaintiff which he left in his room when he departed from the premises on March 2, 1950.

The uncontradicted evidence shows that whatever acts were committed in the demolition of the dwelling and in the removal of the property of the plaintiff, which resulted in loss or injury, were committed by Fike, a subcontractor of C. H. Jimison and Sons, and his agents or employees. Even if Fike and his agent or employees could be considered the representatives of C. H. Jimison and Sons or of One Morris, Inc., they could not, under the

evidence, be held to be the agents, the employees, or the representatives of the defendant whose only connection with One Morris, Inc., at that time, was that of the architect for, and a minority shareholder in, that corporation. The evidence fails to show that in either capacity the defendant controlled, influenced, directed, sanctioned or participated in any acts committed or any conduct engaged in by One Morris, Inc., in connection with the demolition of the dwelling or the removal of the property of the plaintiff from the premises. A director or an officer of a corporation does not incur personal liability for its torts merely by reason of his official character unless he has participated in or sanctioned the tortious acts, 13 Am. Jur., Corporations, Sections 1086 and 1087; and a director who is not a party to a wrongful act is not liable for such acts committed by other persons. *Smith* v. *Cornelius*, 41 W. Va. 59, 23 S. E. 599, 30 L. R. A. 747. The defendant who was not an officer or a director but a minority shareholder of One Morris, Inc., and who, under the evidence, did not control, influence, direct, sanction or participate in the commission of any acts of the corporation in connection with the demolition of the dwelling or the removal of the plaintiff's property, or act as its agent or employee in dispossessing the plaintiff from the premises formerly occupied by him, can not be subjected to liability for any act of the corporation which might have produced or contributed to that result.

It is also clear, from the evidence, that the defendant did not cause any actual eviction of the plaintiff from the premises. Except in the case of eviction by paramount title, not here involved, the acts of third persons do not constitute an eviction of a tenant unless they are done with the authority, the consent, or the sanction of the landlord, or the landlord fails in the duty resting on him to protect the tenant from such acts or their results. 52 C. J. S., Landlord and Tenant, Section 448; 32 Am. Jur., Landlord and Tenant, Section 278. Under the evidence, the plaintiff was dispossessed of the premises by the acts of Fike and his agents and employees and not by any act

committed, authorized, sanctioned, or consented to by the defendant who, having previously disposed of the property by conveyance, the validity and the good faith of which are not questioned or challenged, was under no obligation or duty to protect the plaintiff in his continued occupancy of the premises. It is clear, also, that the workmen who demolished the dwelling and removed and damaged the property of the plaintiff, in so doing, did not act maliciously, or wilfully and wantonly, or use unnecessary force, or engage in any violence, or do anything which amounted to a breach of the peace. Regardless of whom they acted for or represented they simply performed, in a peaceable manner, the work they were instructed or directed to perform.

The single instruction offered by the plaintiff and given by the court should have been refused. Though it correctly stated the law, it contained, among other statements relating to damages, the statement that if the jury believed from the evidence that the conduct and the acts of the defendant toward the plaintiff were wanton, wilful and in utter disregard of his rights, the jury, in addition to money loss or actual damages, could also award exemplary damages, which it did in the amount of $1300.00. As the evidence failed to disclose that the defendant did anything which deprived the plaintiff of his possession of the premises, the defendant, under the evidence, could not have been found by the jury to have engaged in any conduct or to have performed any acts which were wanton or wilful or in utter disregard of the rights of the plaintiff. The statement in the instruction relating to conduct or acts of the defendant of that character was not based upon or supported by the evidence, and, for that reason, the instruction was erroneous. Instructions must be based on the evidence and an instruction which correctly states principles of law but which contains a statement which is not based on the evidence is erroneous. *Chesapeake & Ohio Railway Company* v. *Johnson,* 134 W. Va. 619, 60 S. E. 2d 203; *Jones* v. *Smithson,* 119 W. Va. 389, 193 S. E. 802; *Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106;

*Chadister* v. *Baltimore and Ohio Railroad Company*, 62
W. Va. 566, 59 S. E. 523. The giving of such an instruction,
when prejudicial to the party objecting, constitutes re-
versible error. *Chadister* v. *Baltimore and Ohio Railroad
Company*, 62 W. Va. 566, 59 S. E. 523. An erroneous in-
struction is presumed to be prejudicial and warrants a
new trial unless it apears that the complaining party was
not injured by the giving of such instruction. *Buffington*
v. *Lyons*, 71 W. Va. 114, 76 S. E. 129; *Ward* v. *Brown*, 53
W. Va. 227, 44 S. E. 488.

The verdict of the jury was fatally defective and
should have been set aside by the court of common pleas.
As already pointed out the evidence did not justify an
award of exemplary damages. The evidence does not show
that any of the persons who were engaged in demolishing
the dwelling or who removed the property of the plaintiff
from it acted maliciously, or wantonly and wilfully, or
in utter disregard of the rights of the plaintiff. When it
appears, from the facts in evidence, that a jury could not
legally award exemplary damages, and it also appears
that a verdict included such damages, it is the duty of the
trial court, upon proper motion, to set aside the verdict
and grant a new trial. *Pegram* v. *Stortz*, 31 W. Va. 220,
6 S. E. 485.

The award of $2000.00, as compensatory damages, is also
not sustained by the evidence. Ordinarily the proper
measure of damages for the loss or the destruction of per-
sonal property, other than that which has a peculiar value
to its owner, such as an heirloom, or a particular portrait,
is the fair market value of the property at the time of its
loss or destruction. 15 Am. Jur., Damages, Section 122;
25 C. J. S., Damages, Section 83a. See *Wiles* v. *Wiles*, 134
W. Va. 81, 58 S. E. 2d 601; *Pardee* v. *Camden Lumber
Company*, 70 W. Va. 68, 73 S. E. 82, 43 L. R. A., N. S., 262;
169 A. L. R. 1100, Annotations II a, page 1101, and II d,
page 1107. In Annotations II a, 169 A. L. R. 1101, in re-
lation to the total destruction of an automobile, the text
contains this statement: "Where the automobile is totally
destroyed the measure of damages is the market value

of the automobile as at the time of destruction." As a general rule the proper measure of damages for injury to personal property is the difference between the fair market value of the property immediately before the injury and the fair market value of the property immediately after the injury, plus necessary reasonable expenses incurred by the owner in connection with the injury. *Max Biederman, Inc.* v. *Henderson,* 115 W. Va. 374, 176 S. E. 433; *H. B. Agsten and Sons, Inc.* v. *United Fuel Gas Company,* 117 W. Va. 515, 186 S. E. 126; *Ripley* v. *Whitten Transfer Company,* 135 W. Va. 419, 63 S. E. 2d 626. When, however, the injured property can be restored, by repairs, to the condition which existed before the injury, and the cost of such repairs is less than the dimunition of the market value due to the injury, the measure of damages may be the amount required to restore the property to its previous condition. 25 C. J. S., Damages, Section 83b.

The evidence introduced in behalf of the plaintiff does not establish the fair market value of the items of personal property which were lost or stolen or of those which were injured as a result of their removal from the premises occupied by the plaintiff. As to all such articles of personal property, many of which had been owned by the plaintiff for a considerable period of time before they were lost or injured, the plaintiff offered no evidence to establish their market value, but instead testified merely to the value of such articles to him or the cost which he paid for them. Evidence of that character does not prove the market value of the property and was inadmissible. As to the five suits of clothes of the plaintiff, which were lost or stolen, the testimony of the witness who made and sold them to the plaintiff was that they had no commercial value. The damages claimed by the plaintiff as a result of the loss or the injury to his personal property amounted to approximately $600.00; and because such damages were not proved by competent evidence the jury was not warranted in including them in its award of compensatory damages as it undoubtedly did. The item of property damage of $15.00 to $25.00, representing the estimated

necessary cost to the plaintiff of repairing the damage done to his wardrobe, and the item of $75.00 which he paid to investigators for their unsuccessful efforts in undertaking to locate his missing property are shown by the testimony of the plaintiff but are not established against the defendant; and the item of $17.23, representing the excess in the rent which the plaintiff was required to pay for the room at the hotel over the rent of his room in the dwelling after he was dispossessed, is clearly not recoverable from the defendant. The damages which resulted from aggravation of the illness of the plaintiff and the humiliation and the embarrassment which he suffered, not being substantial or of long duration, do not justify or sustain the amount of compensatory damages awarded by the jury. A verdict which is clearly in excess of the amount which the evidence shows the plaintiff is justly entitled to recover should be set aside by the trial court. *Drummond* v. *Cook Motor Lines,* 136 W. Va. 293, 67 S. E. 2d 337; *Thomason* v. *Mosrie,* 134 W. Va. 634, 60 S. E. 2d 699; *Welty* v. *Baer,* 107 W. Va. 226, 148 S. E. 193. See also *Snodgrass* v. *Charleston NuGrape Company,* 113 W. Va. 748, 169 S. E. 406; *Thomas* v. *Lupis,* 87 W. Va. 772, 106 S. E. 78; *Chafin, Adm'x.* v. *Norfolk and Western Railway Company,* 80 W. Va. 703, 93 S. E. 822.

The defendant complains of the action of the trial court in admitting, over his objection, testimony of the plaintiff that in a conversation with the attorney for the defendant, shortly after the electricity had been disconnected from the premises occupied by the plaintiff, he told the attorney to ask the defendant "to reconnect the electricity in my room" and that the attorney replied "Well, I will ask him, but I am sure he won't do it." Statements or admissions of fact, made by an attorney which are relevant to and are designed to accomplish the purpose of his employment, are regarded as being within the implied authority of the attorney to bind his client and may be admissible in evidence against the client in accordance with the principles which generally govern the relation of principal and agent. 7 C. J. S., Attorney and Client, Section 100 (b);

31 C. J. S., Evidence, Section 361 (a). The foregoing rule, however, does not apply to a statement made by an attorney which constitutes a mere expression of opinion. A statement of an attorney must be a statement of fact, rather than an expression of opinion, to be admissible in evidence against his client. 31 C. J. S., Evidence, Section 272 (b); 22 C. J., Evidence, Section 440, page 375. As the statement of the attorney for the defendant, made in his absence and without his knowledge or consent, was a mere expression of opinion, in the nature of a prediction that the defendant would not do a particular act, it was not binding upon the defendant, was inadmissible against him, and should have been excluded by the trial court. A statement of an attorney, made in the absence of his client and without his knowledge or consent, which constitutes a mere expression of opinion that his client would not do a particular act, is inadmissible in evidence against his client. See 5 Am. Jur., Attorneys at Law, Section 94; *State of New Mexico* v. *Edins*, 25 N. M. 680, 187 P. 545, 8 A. L. R. 1331; *Atlanta and Lowry National Bank* v. *Maughon*, 35 Ga. App. 25, 131 S. E. 916; 8 A. L. R., Annotation, page 1334.

As the errors heretofore considered and discussed call for reversal of the judgments of the circuit court and the court of common pleas, it is unnecessary to consider or determine whether the plaintiff was guilty of contributory negligence in not protecting his property from loss or injury to which it was subjected, or to consider the instructions offered by the defendant which the trial court refused to give.

The judgment of the Circuit Court of Kanawha County and the judgment of the Court of Common Pleas of Kanawha County are reversed, the verdict is set aside, and this case is remanded to the Court of Common Pleas of Kanawha County for a new trial which is hereby awarded the defendant.

> *Judgments reversed,*
> *verdict set aside,*
> *case remanded.*